UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ROBERT BROWN and THE ESTATE OF | ) |
| BOBBI KRISTINA BROWN | ) |
| | ) Civil |
| Plaintiff | ) Action No. |
| | ) <u>1:17-cv-06824-AT</u> |
| v. | ) |
| | ) AMENDED |
| | ) COMPLAINT |
| TV ONE LLC, SWIRL RECORDING & FILM INC. | ) |
| D/B/A SWIRL FILMS, INC.,TRACEY BAKER- | ) |
| SIMMONS, WANDA SHELLEY and B2 | ) |
| ENTERTAINMENT LLC and  SIMMONS SHELLEY | ) |
| ENTERTAINMENT, LLC | ) |
| Defendants | ) |

_____)

**JURISDICTION**

1.     Jurisdiction is predicated on the New York Long Arm Statute.

2.     Jurisdiction is based on federal question. The amount in controversy exceeds Two Million

Dollars ($2,000,000.00).   This Court has supplemental jurisdiction over Plaintiffs' state law

claims arising under the statutory and common law pursuant to 28 U.S.C. § 1338(b), because

those claims are joined with substantial and related claims under federal law. The Court also has

subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because Plaintiffs'

state law claims are interrelated with Plaintiffs' federal claims and arise from a common nucleus

of operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal

claims furthers the interest of judicial economy.

**PARTIES**

3.     Robert Brown ("RB") is a California resident.

4.      The Estate of Bobbi Kristina Brown ("BKB") is administered by Ann Russell-Herrera, Esq., law office of Russell & Herrera PC, 201 Swanton Way, Decatur, GA 30030.  This claim has been assigned to RB.

5.      TV One, LLC ("TV One") has offices at 4 NY Plaza, 5th Floor, New York, NY 10004 and 1010 Wayne Avenue Silver Spring, MD 20910.

6.      Defendant Tracey Baker-Simmons ("Simmons") has an address of 4240 Glen Vista Court, Duluth, GA, 30097. Simmons is an owner of Simmons Shelly Entertainment LLC.

7.      Defendant Wanda Shelley ("Shelley") has an address of 4240 Glen Vista Court, Duluth, GA, 30097. Simmons is an owner of Simmons Shelly Entertainment LLC.

8.      Defendant B2 Entertainment LLC ("B2") is an entertainment company with address of 4240 Glen Vista Court, Duluth, GA, 30097. Simmons is the registered agent and both Simmons and Shelley owned the company.

9.      Defendant Simmons Shelley Entertainment LLC ("SSE") is an entertainment company that has an address of 4240 Glen Vista Court, Duluth, GA, 30097. SSE is owned by Simmons and Shelley.

10.     Swirl Recording & Film Inc. d/b/a Swirl Films, Inc ("Swirl") is a corporation with a business address of 5101 Dunlea Court Wilmington, NC 28405.


**FACTS**

11.     TV One, Swirl, Simmons, Shelley, B2 and SSE (collectively the "Defendants") do business in the State of New York and more specially, New York, New York.

2

12.     Tv One has a business relationship with RCN (channel 125) and Verizon (channel 241) to air Tv One's content in New York, New York to reach the residents of New York City.

13.     Beginning on or about November 2016, the Defendants began the production of the movie about Bobbi Kristina Brown ("BKB"), Whitney Houston ("WH") and RB. RB is BKB's father and the ex-husband of WH. WH and RB are international superstars and BKB was the only child of WH and RB.  Both BKB and WH are deceased and were the subject of tragic circumstances.

14.     Swirl, Simmons, Shelly and SSE are the producers of the movie about BKB and signed a contract with Tv One for the production and distribution of the movie. The movie is scheduled to air on Tv One.

15.     In 2016, the Defendants utilized www.breakdownexpress.com, a website were all union related movies and television shows seeking talent are posted. In November 2016, the Defendants circulated the following information for the casting of the BKB movie as follows:

Tuesday, Nov. 15, 2016, 6:03 PM
Pacific
BOBBI KRISTINA
Movie for Television
SAG-AFTRA
TV ONE NETWORK

Producers: Tracey Baker-Simmons, Wanda Shelley, Eric Tomosunas, Keith Neal
Director: TBD
Writer: Rhonda F. Baraka
Casting Directors: Leah Daniels-Butler, Kevin Scott, Jill Uyeda
Casting Assistant: Gregory Kulhanjian
Start Date: On or about January 9
Location: Atlanta, GA

[BOBBI KRISTINA "KRISSI" BROWN]African American female, 18 to 21, beautiful, slender, sweet, tough and vulnerable, Krissi is the daughter of troubled mega-stars Whitney Houston and Bobby Brown. Extremely close to her mother, especially in the aftermath of her divorce

3

from Brown, Krissi was frequently the caretaker of her substance-abusing mother. Despite some typical teenage rebellion against her mom, Krissi adored her and knew that she was loved in return. Inconsolable after Whitney's tragic, untimely death, Krissi is devastated and needy, and winds up turning for the love she craves to Nick Gordon, the formerly homeless young man taken in by Whitney and raised as Krissi's sibling. Lost and desperate, self-destructive but not without ambition, struggling with a substance abuse problem of her own, Krissi tries to create a career and a life for herself, but she's constantly tripped up by her love for the abusive, violent Nick, who manipulates her into a relationship. Despite solid love and support from her mother's family, Krissi can't seem to recover from the tragedy that destroys her life...LEAD (2)

[NICK GORDON]African American male, 18 to 20, handsome, self-serving, manipulative, Nick was raised by Whitney alongside her biological daughter, Krissi, and had a brother/sister relationship with Krissi as they grew up. Furious when he's left out of Whitney's will, Nick aggressively inserts himself into Krissi's life, taking control of her finances and spending her inherited money freely, while giving her a pittance to live on. Nick becomes increasingly overbearing, violent and abusive towards Krissi, keeping her drug-addled and needy, correctly assuming that her desperate love for him would keep her coming back, despite the mess he makes of her life, her career and her health...LEAD (3)

[WHITNEY HOUSTON]Mid 30's, African American female, beautiful, charismatic, extremely talented, deeply troubled, an American musical icon from an early age, Whitney is seen at various stages of her life with her daughter, Krissi, by her husband Bobby Brown. Though there are moments of joy and happiness with the three of them, there are more times of violence and abuse between Whitney and Bobby, with little Krissi a frightened onlooker. Despite the drug and alcohol abuse that makes her a poor parent and a tragic figure, Whitney loves her daughter and does her best to express her love and support when she can...LEAD (1)

[PAT HOUSTON] Female, 40's, African American, confident, strong, powerful, smart, warm, clear-sighted, Pat is Whitney Houston's sister-in-law (married to Whitney's brother, Gary), confidante and manager. Pat works very hard after Whitney's death to be supportive of her niece, Whitney's daughter Krissi, not only personally, but as a manager as well, getting Krissi her own reality show. Like the rest of the family, Pat is well aware that Nick Gordon is a destructive influence on Krissi, but despite her intervention, Pat can do nothing to change Krissi's mind and feelings about Nick...LEAD (3)

[BOBBY BROWN]Early 30's, male, African American, a talented and well-known singer, Bobby is married to Whitney Houston and is the father of their daughter, Bobby Kristina, aka Krissi. Bobby has moments of a healthy and joyful relationship with his family, but he's a hard drug user and soon devolves into violence and abuse towards his wife. After Whitney's death, Bobby moves on to another wife and children, and only briefly appears to have dinner with the devastated and needy Krissi, towards whom he is affectionate but non-committal...SUPPORTING (11)

STORY LINE: This is the true story of BOBBI KRISTINA "KRISSI" BROWN, the daughter of WHITNEY HOUSTON and BOBBY BROWN, whose devastation after her beloved mother's death causes her to follow a tragically similar trajectory...

16.     RB and the Estate of BKB secured a judgment in excess Thirty Million Dollars ($30,000,000.00) against Nick Gordon ("NG") for the wrongful death of BKB in Georgia in September 2016. RB is BKB's primary heir.

17.     The Defendants began production of the movie about BKB, RB, WH and NG in January-June 2017.   RB representatives communicated with TV One, Simmons and SSE, and requested that they cease and desist the production of the movie.

18.     The Defendants continued to produce the movie and completed the movie.   On or about April 2017, the Defendants began promoting the film about RB and his deceased daughter, BKB.  Defendants have marketed and promoted the movie in New York City and New York State.

19.     The movie has not aired as of yet but is scheduled to air in October 2017 in New York City on RCN (channel 125) and Verizon (channel 241). See Exhibit A and Exhibit B.

20.     The Defendants knowingly and maliciously used the persona and life of BKB and RB in the movie and promotion of the BKB movie. The movie contains defamatory scenes about the life of BKB as indicated in the www.breakdownexpress.com casting call information.

21.     Upon information and belief, the Defendants' BKB movie contains defamatory and untrue depictions of RB being violate towards WH.

22.     Upon information and belief, the Defendants' movie contains defamatory untrue depictions of RB and BKB and scenes suggesting that RB does not love his daughter or is committed to BKB.

23.     The Defendants' movie and the script writing are libelous and slanderous towards RB. The depictions of RB are knowingly false and recklessly presented for the financial gain of the Defendants.

24.     The Defendants have begun to promote the film in violation of BKB's and RB's rights.  Defendants knowingly intend to depict a false story about RB.

25.     In February 2017, RB requested that TV One provide a copy of the script but it was never provided to RB. RB also requested to screen the film however, TV One declined.

26.     The right of publicity prevents the use of another's name, image, likeness, or other recognizable aspects of his or her persona for commercial gain without permission. New York has codified its right of publicity as part of its "Right of Privacy" statute, at Article 5 of the N.Y. Civil Rights Law Sections 50 and 51.

27.     Section 51 provides for both injunctive relief and compensatory damages. A plaintiff can seek an injunction against continued use of his identity, and can recover monetary damages to compensate for the harm caused by past uses. The damage award primarily compensates for emotional distress. See <u>Garis v. Uncut-RawTV</u>, No. CV 06–5031, 2011 WL 4404035, at *3-4 (E.D.N.Y, July 5, 2011).

28.     Section 51 also provides for punitive or exemplary damages, if certain conditions are met. A plaintiff can recover exemplary damages if the defendant knew that the plaintiff had not consented to the use of her identity. Id. at 4-5. Courts may award exemplary damages if necessary to deter future violations of Section 51.

29.     The Defendants have violated RB's rights and knew he did not consent to the movie.  RB also has a contract with Black Entertainment Television ("BET") associated with a movie about his life and Defendants unauthorized use of any aspect of RB's life negatively impacts his rights to publicity.

30.     The Defendants have violated RB's rights to publicity.

31.     All the Defendants, especially Simmons and Shelley, are keenly aware that intellectual property about RB, WH and BKB, are very valuable and of interest to the public.

32.     BKB died in 2015 in the state of Georgia.

33.     Georgia's courts have developed a common law right of publicity. Various Georgia court decisions refer to the "right of publicity," "misappropriation of likeness," and similar terms. The Supreme Court of Georgia's 1982 decision in Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.

34.     Georgia's right to publicity survives death. See King v. Heritage, 296 S.E.2d 697 (1982).

35.     Georgia's right of publicity protects against unauthorized uses of a person's identity "for financial gain." The King defendant's sale of plastic busts was considered commercial, . In Alonso v. Parfet, the Georgia Supreme Court further ruled that use of a person's name on "various forms and documents" used in the course of business could establish a violation. 325 S.E. 2d 152 (Ga. 1985).

36.     The Estate of BKB does not consent to the release of the film and the Defendants have violated the right of BKB.

37.     The Defendants are using the life, image, name and likeness of BKB for financial gain in violation of rights of the Estate of BKB.

38.     In 2004, RB through his company Brownhouse Entertainment, Inc. ("Brownhouse") (dissolved), and Shelley/Simmons through their company B2 (dissolved), signed an agreement for the creation of the television series, "Being Bobby Brown".  The show aired on Bravo for one season.

7

39.     Pursuant to the agreement between B2 and Brownhouse, Brown, Shelley and Simmons agreed not to use any materials associated with Brown's family friends or employers without his consent in tv or film projects.  Section 2(b) and section 6 on the Agreement reads as follows:

Section 2 (b) on the Contract

> b.     <u>By Brownhouse</u>:
>
> i.     Brownhouse shall lend the services of Artist, and Artist shall perform on-camera talent services on an exclusive basis during all periods of production and Artist shall undertake no services that would materially interfere with Artist's services hereunder.  **Artist grants to Company the right to use, film, tape and otherwise record events relating to or occurring in Artist's life and portions of Artist's life story including without limitation any relationships with family, friends, employers and the like during and after all phases of production of the Project**, so that Company can produce episodes of the Project, and so that Company can distribute, exhibit and/or otherwise use the Project and/or other works, productions **and materials based** thereon.
>
> 6.     <u>Confidentiality</u>:  Except where required by law, **both parties shall keep confidential the Project and any ideas, concepts, stories plots, themes or other material related to the Project unless express written consent is provided by the parties.  Neither party shall: circumvent the other's role and anticipated financial compensation in connection with the Project or other unscripted television programs; negotiate a side deal with any third party in the which does not include the other party; or any way attempt to circumvent the spirit and intent of this Agreement.**

See Exhibit C.

40.     The Defendants have taken information Simmons and Shelley obtained while working with RB on "Being Bobby Brown" and have utilized the material in the film. This includes information about WH, BKB, RB and others.

41.     The Defendants have not obtained the written consent of RB in the creation of the film.

42.     The Defendants have (1) circumvented RB's role (2) have negotiated a side deal with a third party to make the BKB project with includes information obtained and associated with the show "Being Bobby Brown" and  (3) circumvented the spirit and intent  of the Agreement in violation of paragraph 6 of the Agreement by utilizing information, concepts, ideas and materials obtained during the production of "Being Bobby Brown" to create the BKB movie without the consent of the Plaintiff.

43.     Brown and his company performed their obligations under the Agreement. B2, Shelley and Simmons have partnered with Swirl, SSE and TV One in violation of the agreement reached in 2004.


**COUNT I**
**DEFAMATION OF CHARACTER-LIBEL**
**ROBERT BROWN**
**<u>AGAINST ALL DEFENDANTS</u>**


44.     RB repeats and realleges each of the preceding paragraphs 1-43.

45.     The Defendants have published derogatory comments/words/scripts/movie indicating that RB was violent towards WH.

46.     The Defendants have published derogatory comments/words/scripts/movie indicating that RB was abusive towards WH.   The Defendants have published

9

derogatory comments/words/scripts/movie indicating that RB engaged in multiple acts of violence and abuse and BKB was a witness to such action.

47.     The actions of the Defendants have damaged the reputation of the RB.

48.     The actions of the Defendants were designed to capitalize on the death of WH and BKB and use RB's image for financial gain.

49.     The actions of the Defendants were done with malice and disregard for the truth.

50.     The Defendants engaged in reckless production of the movie.

51.     The Defendants actions have damaged RB.

**COUNT II**
**DEFAMATION OF CHARACTER-SLANDER**
**ROBERT BROWN**
**AGAINST ALL DEFENDANTS**

52.     RB repeats and realleges each of the preceding paragraphs 1-51.

53.     The Defendants have published and stated derogatory comments about the Plaintiff in regards to his relationship with WH and BKB.   RB requested that the Defendants not produce the film, however, the request has been denied.

54.     The actions of the Defendants have damaged the reputation of RB.

55.     The actions of the Defendants were designed to capitalize on the death of WH, BKB and the persona of RB.

56.     The actions of the Defendants were done with malice and disregard for the truth.

57.     The Defendants engaged in reckless film production for financial gain.

58.     The Defendants actions have damaged the Plaintiff.

**COUNT III**
**VIOLATION OF ARTICLE 5**
**RIGHT TO PRIVACY NY CLS CIV. R SECTION 50 & 51**
**ROBERT BROWN**
**AGAINST ALL DEFENDANTS**

59.    RB repeats and realleges each of the preceding paragraphs 1-58.

60.     A defendant violates Section 51 of the  when they (1) within New York state, (2) for advertising to trade purposes and (3) without written consent (4) utilizes, the voice, persona, likeness, image or portrait of a person.

61.    The Defendants are advertising the BKB movie in New York without the consent of RB.

62.    Defendants' are utilizing, the likeness, life and persona of RB for their person gain.

63.    Plaintiff has been harmed by the actions of Defendants.


**COUNT IV**
**BREACH OF CONTRACT**
**ROBERT BROWN**
**AGAINST B2, SIMMONS AND SHELLEY**


64.    RB repeats and realleges each of the preceding paragraphs 1-63.

65.    RB through Brownhouse entered into an agreement with B2 in 2004.

66.    Shelly and Simmons were the owners of B2 before it was dissolved.

67.    RB was the owner of Brownhouse before it was dissolved.

68.    The parties contract related to the show "Being Bobby Brown" which starred the Plaintiff.

69.    RB and Brownhouse performed the contract.

11

70.     B2, Simmons and Shelley breached the contract, particularly paragraphs 2 and 6 of the agreement and provided material about Brown and others, to Tv One and Swirl which appears in the BKB movie and are the subject of the contract between Brownhouse and B2.

71.     The breach has harmed Plaintiff in his business.

**COUNT V- LANHAM ACT**
**FALSE SPONSORSHIP AND ENDORSEMENT**
**AGAINST ALL DEFENDANTS**

72.     Plaintiffs repeat and reallege each of the preceding paragraphs 1-71.

73.     Section 43(a) of the Lanham Act creates liability for "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce . . . false or misleading representation of fact, which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1).

74.     RB is an international superstar and the use of his likeness violated the Lanham Act, and BKB is the daughter of RB.

75.     RB has interest in the unregistered trade name and trademark in his name, likeness and image.

76.     The use of BKB's and RB's name and likeness has caused confusion as the origin of the BKB movie.

77.     RB affiliation with the Estate of BKB, as BKB's her sole heir, also is likely to cause confusion as to the origin of the BKB film.

78.     The Defendants are utilizing the likeness of RB in the marketing and promotion of the BKB film which is causing confusion as to the origin, sponsorship and approval of the film.

12

79.     RB does not endorse the film.

80.     The Estate of BKB does not endorse the film.

81.     The Defendants have damaged the Plaintiffs.

## COUNT VI- VIOLATION OF GEORGIA
## RIGHT TO PRIVACY
## ESTATE OF BKB
## AGAINST ALL DEFENDANTS

82.     Estate of BKB repeats and realleges each of the preceding paragraphs 1-81.

83.      Defendants have violated the Georgia common law right to publicity.

84.     The Defendants have produced the BKB movie and has marketed, advertised and distributed the BKB movie in New York without the consent of the Estate of BKB and intends to air the movie in October 2017.

85.     Defendants' are utilizing, the likeness, life and persona of BKB for their personal gain without the consent of the Estate of BKB.

86.     The Estate of BKB has an interest in the name, likeness and persona of BKB and the Plaintiffs have been harmed by the actions of the Defendants in the production and marketing of the BKB movie.

## COUNT VII- LANHAM ACT
## UNFAIR COMPETITION
## ROBERT BROWN
## AGAINST ALL DEFENDANTS

87.     RB repeats and realleges each of the preceding paragraphs 1-86.

88.     The Lanham Act protects parties from unfair competitive acts of parties.

89.     RB has interest in the unregistered trade name and trademark in his name, likeness and image.

90.     The Defendants unauthorized use of RB names and likeness constitutes unfair competition.

91.     RB has a contract with BET for the production of RB's life story.

92.     The Defendants are utilizing the likeness of RB in the marketing and promotion of the BKB film which is competing with the BET production of the RB story.

93.     Defendants actions are willful and harms RB's business with BET.


### COUNT VIII- PERMANENT INJUNCTION
### AGAINST ALL DEFENDANTS

94.     Plaintiffs repeat and reallege each of the preceding paragraphs 1-93.

95.     Plaintiff is entitled to an injunction against the Defendants.

96.     *Grounds.*

         Plaintiffs will suffer immediate and irreparable injury, loss, or damage if Defendants' conduct described above is not enjoined for these reasons:  (1) Defendants are engaging in the defamation of Brown  (2) Defendants' are violating Plaintiffs' rights to publicity (3) Defendants' B2, Shelley and Simmons have breached their agreement with Brown reached in 2004 and (4) have violated the Lanham Act and caused confusion and the origins, sponsorship and approval of the BKB movie in paragraphs in 72-78 below.  Plaintiffs do not have an adequate remedy at law and the Defendants' intend to use the Plaintiffs' names, likeness and persona.  Plaintiffs have exercised due diligence in prosecuting this claim.  The injury to Plaintiffs if the Defendants continue the conduct described above would outweigh any injury the restraining order and injunction might cause Defendants. An issuance of the restraining order and injunction would not disserve the public interest.

97.      Plaintiffs has a likelihood of success on the merits.

98.      Plaintiffs seeks a restraining order restraining Defendants' their officers, agents, servants,

affiliates, assignees, and employees from directly or indirectly marketing, selling, promoting,

distributing the BKB movie.

WHEREFORE, The Plaintiffs demand a jury trial and the following:

1.      Judgment on all counts and amount to be determined by the Court in excess of Two
Million Dollars ($2,000,000.00);
2.      Interest;
3.      Attorneys Fees;
4.      Punitive damages;
5.      injunctive relief; and,
6.      Any other relief this Court deems just and equitable.


                                        ROBERT BROWN and THE
                                        ESTATE OF BOBBI KRISTINA BROWN
                                        By Their Attorneys,



                                        Christopher Brown, NY Bar # 2953891
                                        Brown & Rosen LLC
                                        Attorneys At Law
                                        100 State Street, Suite 900
                                        Boston, MA 02109
                                        617-728-9111 (T)
                                        617-695-3202 (F)
Dated: September 12, 2017               cbrown@brownrosen.com

# EXHIBIT A







# BOBBI KRISTINA
## PREMIERES OCTOBER 8 7/6C

INSIDE THE SHOW \ VIDEOS \



# 1. JOY ROVARIS AS BOBBI KRISTINA





# 6. LEAZIONNA BRADEN AS YOUNG BOBBI KRISTINA





# 5. HASSAN JOHNSON AS BOBBY BROWN



# EXHIBIT B

https://blackamericaweb.com/2017/04/28/first-look-at-tv-ones-bobbi-kristina-biopic-photo/

TV One has a couple of things up their sleeve for Summer/Fall 2017 but the biggest thing we are looking forward to is their Bobbi Kristina biopic.

Below is a look at the core cast which puts Demetria McKinney as Whitney Houston and Hassan Jonson as Bobby Brown



# EXHIBIT C

**From:** Tracey Baker-Simmons <tbakersimmons@me.com>
**Subject: B2 Brownhouse Co-Production Agreement**
**Date:** April 27, 2015 at 8:47:28 AM EDT
**Cc:** Wanda Shelley <wanda@simmonsshelley.com>
**To:** cbrown@brownrosen.com

Chris:

Please find attached the co-production agreement which outlines the talent fee for Bobby for the Being Bobby Brown series.

Also, we can not provide you with the actual distribution agreement because we signed an agreement that prohibits us from sharing the document with a 3rd party. Bobby was not a party of that agreement.


Best regards,


Tracey Baker-Simmons
Executive Producer
Simmons Shelley Entertainment,LLC

<u>AGREEMENT</u>

This letter dated as of March 25, 2004 confirms the terms of the development and co-production agreement reached between B2 Entertainment, LLC ("B2") and Brown House Entertainment, Inc. ("Brownhouse") in connection with the development, distribution, disposition and exploitation of the proposed television reality project currently entitled "Untitled Bobby Brown Project" (the "Project").

WHEREAS, the parties have formed an entity, B2Brownhouse, LLC, which is owned and controlled equally by B2 and Brownhouse, for the purpose of developing, distributing and producing the Project (the "Company"); and

WHEREAS, B2 shall enter into a production services agreement and shall provide the initial funding for the Project; and

WHEREAS, Brownhouse has agreed to loan-out the services of Bobby Brown ("Bobby") and Tommy Brown ("Tommy") (Bobby and Tommy shall be collectively referred to as "Artist"), as well as obtain fully executed agreements with all of the principal on-camera participants in connection with the Project.

NOW THEREFORE, for good and valuable consideration, the parties have agreed as follows:

1.      <u>Development/Production</u>: B2 and Brownhouse agree to develop the Project or cause the Project to be developed for exploitation and to procure third party commitments for the production and/or distribution of the Project for a period commencing from the date of this agreement through and until December 31, 2004 (the "Term").   All rights in and to the Project during the Term shall be held by Company.

2.      <u>Services</u>:

a.      <u>By B2</u>:

        i.      B2 shall provide 100% of the initial funding for the Project (the amount of which shall be determined based on a budget to be provided by B2) (the "Initial Investment"); and

        ii.      B2 agrees to provide the services of Tracey Y. Baker ("Tracey") and Wanda Shelley ("Wanda") to supervise all production services and technical assistance which Company may require in connection with the production of the Project. Without limiting the generality of the foregoing, the services shall include: the hiring and/or furnishing of all personnel (including, without limitation, extras, stunt persons and other above-the-line personnel and below-the-line personnel); services; unions; location permits; work permits; facilities; equipment and materials reasonably necessary for the production.

b.     By Brownhouse:

i.     Brownhouse shall lend the services of Artist, and Artist shall perform on-camera talent services on an exclusive basis during all periods of production and Artist shall undertake no services that would materially interfere with Artist's services hereunder. Artist grants to Company the right to use, film, tape and otherwise record events relating to or occurring in Artist's life and portions of Artist's life story including without limitation any relationships with family, friends, employers and the like during and after all phases of production of the Project, so that Company can produce episodes of the Project, and so that Company can distribute, exhibit and/or otherwise use the Project and/or other works, productions and materials based thereon.  Brownhouse shall cause Artist to: meet with and be interviewed from time-to-time by Company and other Project personnel, both on-camera and off-camera in connection with the Project; appear at such locations as Company and Artist may designate; participate in connection with promotion, marketing, advertising, publicity, interviews and similar matters (e.g., appearing on news shows, morning shows, talk shows, specials, and other programs) in connection with the Project; and perform such other services and Company and Artist may determine; and

ii.     Brownhouse shall cause Artist to grant to Company a perpetual, royalty free license to include music performed, recorded and/or controlled by Artist in the Project, and Artist agrees to obtain, or cause the music publisher, record label or third party to obtain, any and all consents required for those musical compositions performed by the Artist in connection with the Project and/or in or in connection with the advertising and promotion thereof and the Project.

3.     Proceeds:  After B2 recoups the Initial Investment, plus ten percent (10%), all proceeds derived by Company from the distribution, disposition and exploitation of the Project shall be shared equally (50%/50%) by B2 and Brownhouse.  Proceeds shall include development fees or producing and all other income from all sources; provided that any acting or executive producing fees paid to Tracey and/or Wanda, as well as any acting fees paid to Bobby Brown and/or Tommy Brown, if any, in connection with the Project shall not be included in the Proceeds to be split by the parties.

4.     Management:     B2 and Brownhouse shall negotiate with a third party financier/distributor as a team and shall mutually agree on all material decisions in connection with the development, distribution, disposition and exploitation of the Project; provided that in the event of a disagreement between the parties, B2 shall have final decision-making authority.

5.     Credit:

a.       Individual Credit.  The parties agree that, in connection with the Project and subject to network and/or distributor approval, Tracey and Wanda shall be accorded executive producer credit in the main titles, or if no main titles, in the end titles, and Bobby and Tommy shall each be accorded co-executive producer credit on-screen, on a shared card in the main titles, or if no main titles, in the end titles.

b.       Company Credit.  The parties agree that B2 and Brownhouse shall be entitled to a presentation and logo credit in connection with the Project in the main titles, or if no main titles, in the end titles.

6.       Confidentiality:  Except where required by law, both parties shall keep confidential the Project and any ideas, concepts, stories plots, themes or other material related to the Project unless express written consent is provided by the parties.  Neither party shall: circumvent the other's role and anticipated financial compensation in connection with the Project or other unscripted television programs; negotiate a side deal with any third party in the which does not include the other party; or any way attempt to circumvent the spirit and intent of this Agreement.

7.       Miscellaneous:  This agreement sets forth the entire agreement of the parties and supersedes all prior discussions, agreements or understandings regarding its subject matter. This agreement may be amended only by a written instrument signed by each of the parties. This agreement will be governed by California law.  This agreement will inure to the benefit of and bind the parties and their respective heirs, executors, administrators, successors and permitted assigns.

The parties agree to execute such other documents as may be necessary to secure the rights contemplated hereunder.  The parties contemplate that they will enter into a more elaborate agreement containing the terms recited in this agreement and such other provisions as are customary and appropriate in agreements of this nature.  Unless and until the parties actually negotiate and sign such an agreement, if at all, this agreement will be deemed binding.


ACCEPTED AND AGREED:


B2 ENTERTAINMENT,LLC                    BROWNHOUSE      ENTERTAINMENT,
INC.


By:_____          By: _____
Its: _____          Its: _____

By:_____        By:_____

Its: _____        Its: _____


B2BROWNHOUSE, LLC


By:_____        By:_____

Its: _____        Its: _____