UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ROBERT BROWN and THE ESTATE OF BOBBI KRISTINA BROWN | ) |
| | ) |
| | ) |
| Plaintiffs | )  Action No. |
| | )  1:17-cv-06824-AT |
| v. | ) |
| | ) MEMORANDUM OF LAW |
| | ) IN SUPPORT OF |
| TV ONE LLC, SWIRL RECORDING & FILM INC. | ) APPLICATION FOR |
| D/B/A SWIRL FILMS, INC.,TRACEY BAKER- | ) PRELIMINARY INJUNCTION |
| SIMMONS, WANDA SHELLEY and B2 | ) AND RESTRAINNG ORDER |
| ENTERTAINMENT LLC and  SIMMONS SHELLEY | ) |
| ENTERTAINMENT, LLC. | ) |
| Defendants | ) |

_____)


ROBERT BROWN and
THE ESTATE OF BOBBI KRISTINA BROWN

By Their Attorneys,
Christopher L. Brown
New York Bar No. 2953891
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
September 18, 2017      cbrown@borwnrosen.com

## Table of Contents

**Table of Contents**                                                                    2

**Table of Cases**                                                                       2

**Table of Statutes**                                                                    5

**INTRODUCTION**                                                                         6

**FACTS**                                                                                6

**ARGUMENT**                                                                            14

**1. Plaintiffs Request For An Injunction Must Be Granted
Because The Defendants' Are Violating Multiple Rights
That Belong To The Plaintiffs**                                                         14

**I. Preliminary Injunction**                                                           14

    **1. Success On The Merits**                                     15

      A.   Defendants Have Violated Georgia's Common
            Law Right To Publicity In Regards To The Estate Of Bobbi
            Kristina Brown                                              16
      B.   Defendants Have Violated Brown's Right To Publicity
            In New York                                                 17
      C.   Defendants Have Violated The Lanham Act                      19
      D.   Defendants Have Defamed Robert Brown                         20
      E.   Defendant B2 Breached Its Contract With Brown                21

    **2. The Balance Of The Equites Tips Sharply In Favor of
Robert Brown And The Estate Of Bobbi Kristina Brown**                                   22

    **3. First Amendment Concerns Do Not Exist In This Matter**               23

**CONCLUSION**                                                                          23

**Table of Cases**

Abbott Lab. V. Mead John-son & Co., 971 F. 2d 6 (7th Cir. 1992)                    23

Aetna Ins. Co. v Capasso, 75 NY2d 860 (1990)                                        15

Albert v. Apex Fitness, Inc., No. 97 Civ. 1151 (LAK), 1997 WL 323899,
(S.D.N.Y. Jun. 13, 1997)                                                             19

Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,
No. 04 Civ. 6107 (DAB), 2006 WL 2289847 (S.D.N.Y. Aug. 8, 2006)                      19

 Ali v. Playgirl, Inc., 447 F. Supp. 723 (S.D.N.Y. 1978)                             18

Allen v. Nat'l Video, Inc., 610 F. Supp. 612 (S.D.N.Y. 1985)                         18

Alonso v. Parfet, 325 S.E. 2d 152 (Ga. 1985)                                         12,16

Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531 (1987)                   15

ASA Music Prods. v. Thomsun Elecs., No. 96-cv-1872, 1999
U.S. Dist LEXIS 13221, (S.D.N.Y. Jan. 20, 1999)                                      17

Bell v. Foster, 2013 WL 6229174 (N.D. Ga. 2013)                                      16

Carillon Imps., Ltd. v. Frank Pesce Int'l Group Ltd.,
112 F.3d 1125 (11th Cir. 1997)                                                     22

Castrol Inc. v. Pennzoil Co., 987 F.2d 939 (3d 1993)                                 23

Central Hudson Gas & Electric Corp. v Public Service Com.,
447 US 557 (1980)                                                                    23

Dataphase Systems, Inc. v. C L Systems,Inc.,
640 F.2d 109 (8th Cir. 1981) (en banc)                                               14-15

Diller v. Steurken, 185 Misc. 2d 274 (N.Y. Sup. Ct. 2000)                            17

Dillion of City of New York, 261 A.D.2d 34 (N.Y.A.D. 1 Dept 1999)                    20

Estee Lauder, Inc. v. Watsky, 323 F. Supp. 1064 (S.D.N.Y. 1970)                      22

Garis v. Uncut-RawTV, No. CV 06–5031, 2011 WL 4404035,
(E.D.N.Y, July 5, 2011)                                                              10

Hard Rock Café v. Concessions Services, Inc, 955 F.2d  1143 (7th Cir. 1992)        22

Hoepker v. Kruger, 200 F.Supp.2d 340 (S.D.N.Y. 2002)          18

Kennedy Industries, Inc. v. Aparo, 416 F. Supp. 2d 311 (E.D. Pa. 2005)          22

Kroupa v. Nielsen, 731 F.3d 813 (8th Cir. 2013)          15

Lankford v. Sherman, 451 F.3d 496   (8th Cir. 2006)          14

Martin Luther King, Jr. Center for Social Change, Inc. v.
American Heritage Products, Inc.. 296 S.E.2d 697 (1982)          11,12,16

Myskina v. Conde Nast Publ'ns, Inc., 386 F.Supp.2d 409 (S.D.N.Y. 2005)          17

Onassis v. Christian Dior-New York, Inc., 122 Misc. 2d 603 (N.Y. Sup. Ct. 1984)          18

Osmose, Inc. v. Viance, LLC, 612 F. 3d 1298 (11th Cir. 2010)          22

Pirone v. McMillian Inc., 894 F.2d 579 (2d Cir 1990)          17

Planned Parenthood Minn., N.D., S.D. v. Rounds,
530 F.3d 724 (8th Cir. 2008) (en banc)          15

Stephano v. News Group Publ'ns, Inc., 64 N.Y.2d 174  (1984)          17

Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85 (2d Cir. 1989)          18

Toffoloni v. LFP Pub. Grp., LLC,572 F.3d 1201 (11th Cir. 2009)          16

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992)          22

Vidal Sassoon, Inc. v. Bristol- Meyers Co., 661 F.2d 272 (2d Cir. 1981)          23

Virginia State Bd. of Pharmacy v Virginia Citizens Consumer Council,
425 U.S. 748 (1976)          23

Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F. Supp. 2d 261
(S.D.N.Y. 2007)          19

W.T. Grant Co. v Srogi, 52 NY2d 496 (1981)          15

Young v. Greneker Studios, Inc., 175 Misc. 1027 (N.Y. Sup. Ct. 1941)          18

**Table of Statutes**

| | |
|---|---|
| 15 U.S.C. § 1125 | 19 |
| 15 U.S.C. § 1127 | 22 |
| Lanham Act | 19,20, 22,23 |
| N.Y. Civ. Rights Law § 50 | 10,17,18 |
| N.Y. Civ. Rights Law § 51 | 10,17,18 |

## INTRODUCTION

Plaintiffs seek to have the Defendants movie, "Bobbi Kristina" enjoined from being released on Tv-One and its affiliates on October 8, 2017. The movie violates multiple rights of the Plaintiffs and is also made in violation of a contract executed by Robert Brown's previous company with B2 Entertainment LLC.

## FACTS

1.      Robert Brown ("RB") is a California resident. See Affidavit of Brown at paragraph 1.

2.      The Estate of Bobbi Kristina Brown ("BKB") is administered by Ann Russell-Herrera, Esq., law office of Russell & Herrera PC, 201 Swanton Way, Decatur, GA 30030.  This claim has been assigned to RB.   See Amended Complaint at paragraph 2.

3.      TV One, LLC ("TV One"), Tracey Baker-Simmons ("Simmons") ,Wanda Shelley ("Shelley") Defendant B2 Entertainment LLC ("B2"),Simmons Shelley Entertainment LLC ("SSE") and Swirl Recording & Film Inc. d/b/a Swirl Films, Inc ("Swirl") are working together to produce, market, sell advertise and distribute, Tv One's upcoming Bobbi Kristina Movie. See Affidavit of Brown at paragraph 4-6 and Amended Complaint at paragraph 10-11.

4.      TV One, Swirl, Simmons, Shelley, B2 and SSE (collectively the "Defendants") do business in the State of New York and more specially, New York, New York. See Amended Complaint at paragraph 12.

5.      Tv One has a business relationship with RCN (channel 125) and Verizon

(channel 241) to air Tv One's content in New York, New York to reach the residents of

New York City. See Amended Complaint at paragraph 12.

6.      Beginning on or about November 2016, the Defendants began the production of

the movie about Bobbi Kristina Brown ("BKB"), Whitney Houston ("WH") and RB.

RB is BKB's father and the ex-husband of WH. WH and RB are international superstars

and BKB was the only child of WH and RB.  Both BKB and WH are deceased and were

the subject of tragic circumstances. See Affidavit of Brown at paragraph 7.

7.      Swirl, Simmons, Shelly and SSE are the producers of the movie about BKB and

signed a contract with Tv One for the production and distribution of the movie. The

movie is scheduled to air on Tv One. See Affidavit of Brown at paragraph 7.

8.      In 2016, the Defendants utilized www.breakdownexpress.com, a website were all

union related movies and television shows seeking talent are posted. In November 2016,

the Defendants circulated the following information for the casting of the BKB movie as

follows:

Tuesday, Nov. 15, 2016, 6:03 PM
Pacific                                                      Producers: Tracey Baker-Simmons,
BOBBI KRISTINA                                   Wanda Shelley, Eric Tomosunas,
Movie for Television                              Keith Neal
SAG-AFTRA                                            Director: TBD
TV ONE NETWORK                               Writer: Rhonda F. Baraka
                                                              Casting Directors: Leah Daniels-
                                                              Butler, Kevin Scott, Jill Uyeda
                                                              Casting Assistant: Gregory
                                                              Kulhanjian
                                                              Start Date: On or about January 9
                                                              Location: Atlanta, GA

[BOBBI KRISTINA "KRISSI" BROWN]African American female, 18 to 21, beautiful, slender, sweet, tough and vulnerable, Krissi is the daughter of troubled mega-stars Whitney Houston and Bobby Brown. Extremely close to her mother, especially in the aftermath of her divorce from Brown, Krissi was frequently the caretaker of her substance-abusing mother. Despite some typical teenage rebellion against her mom, Krissi adored her and knew that she was loved in return. Inconsolable after Whitney's tragic, untimely death, Krissi is devastated and needy, and winds up turning for the love she craves to Nick Gordon, the formerly  homeless young man taken in by Whitney and raised as Krissi's sibling. Lost and desperate, self-destructive but not without ambition, struggling with a substance abuse problem of her own, Krissi tries to create a career and a life for herself, but she's constantly tripped up by her love for the abusive, violent Nick, who manipulates her into a relationship. Despite solid love and support from her mother's family, Krissi can't seem to recover from the tragedy that destroys her life...LEAD (2)

[NICK GORDON]African American male, 18 to 20, handsome,  self-serving, manipulative, Nick was raised by Whitney alongside her biological daughter, Krissi, and had a brother/sister relationship with Krissi as they grew up. Furious when he's left out of Whitney's will, Nick aggressively inserts himself into Krissi's life, taking control of her finances and spending her inherited money freely, while giving her a pittance to live on. Nick becomes increasingly overbearing, violent and abusive towards Krissi, keeping her drug-addled and needy, correctly assuming that her desperate love for him would keep her coming back, despite the mess he makes of her life, her career and her health...LEAD (3)

[WHITNEY HOUSTON]Mid 30's, African American female, beautiful, charismatic, extremely talented, deeply troubled, an American musical icon from an early age, Whitney is seen at various stages of her life with her daughter, Krissi, by her husband Bobby Brown. Though there are moments of joy and happiness with the three of them, there are more times of violence and abuse between Whitney and Bobby, with little Krissi a frightened onlooker. Despite the drug and alcohol abuse that makes her a poor parent and a tragic figure, Whitney loves her daughter and does her best to express her love and support when she can...LEAD (1)

[PAT HOUSTON] Female, 40's, African American, confident, strong, powerful, smart, warm, clear-sighted, Pat is Whitney Houston's sister-in-law (married to Whitney's brother, Gary), confidante and manager. Pat works very hard after Whitney's death to be supportive of her niece, Whitney's daughter Krissi, not only personally, but as a manager as well, getting Krissi her own reality show. Like the rest of the family, Pat is well aware that Nick Gordon is a destructive influence on Krissi, but despite her intervention, Pat can do nothing to change Krissi's mind and feelings about Nick...LEAD (3)

[BOBBY BROWN]Early 30's, male, African American, a talented and well-known singer, Bobby is married to Whitney Houston and is the father of their daughter, Bobby Kristina, aka Krissi. Bobby has moments of a healthy and joyful relationship with his family, but he's a hard drug user and soon devolves into violence and abuse towards his wife. After Whitney's death, Bobby moves on to another wife and children, and only briefly appears to have dinner with the devastated and needy Krissi, towards whom he is affectionate but non-committal...SUPPORTING (11)

STORY LINE: This is the true story of BOBBI KRISTINA "KRISSI" BROWN, the daughter of WHITNEY HOUSTON and BOBBY BROWN, whose devastation after her  beloved mother's death causes her to follow a tragically similar trajectory...

9.      RB and the Estate of BKB secured a judgment in excess Thirty Million Dollars

($30,000,000.00) against Nick Gordon ("NG") for the wrongful death of BKB in

Georgia in September 2016. RB is BKB's primary heir.  See Affidavit of Brown at paragraph 3.

10.     The Defendants began production of the movie about BKB, RB, WH and NG in January-June 2017.   RB representatives communicated with TV One, Simmons and SSE, and requested that they cease and desist the production of the movie. See Affidavit of Brown at paragraph 9.

11.     The Defendants continued to produce the movie and completed the movie.   On or about April 2017, the Defendants began promoting the film about RB and his deceased daughter, BKB.  Defendants have marketed and promoted the movie in New York City and New York State. Id.

12.     The movie has not aired as of yet but is scheduled to air in October 2017 in New York City on RCN (channel 125) and Verizon (channel 241). See Exhibit A to the Amended Complaint paragraph 1 and See Exhibit A to the Amended Complaint.

13.     The Defendants used the persona and life of BKB and RB in the movie and promotion of the BKB movie. The movie contains defamatory scenes about the life of BKB as indicated in the www.breakdownexpress.com casting call information. See Affidavit of Brown at paragraph 9, 13-21.

14.     Upon information and belief, the Defendants' BKB movie contains defamatory and untrue depictions of RB being violent towards WH. See Affidavit of Brown at paragraph 13-14.

15.     Upon information and belief, the Defendants' movie contains defamatory untrue depictions of RB and BKB and scenes suggesting that RB does not love his daughter or is committed to BKB. See Affidavit of Brown at paragraph 13-21.

16.     The Defendants' movie and the script writing are libelous and slanderous towards RB. The depictions of RB are knowingly false and recklessly presented for the financial gain of the Defendants. The Defendants have begun to promote the film in violation of BKB's and RB's rights.  Defendants knowingly intend to depict a false story about RB.

17.     In February 2017, RB requested that TV One provide a copy of the script but it was never provided to RB. RB also requested to screen the film however, TV One declined. See Affidavit of Brown at paragraph 18.


18.     The right of publicity prevents the use of another's name, image, likeness, or other recognizable aspects of his or her persona for commercial gain without permission. New York has codified its right of publicity as part of its "Right of Privacy" statute, at Article 5 of the N.Y. Civil Rights Law Sections 50 and 51.

19.     Section 51 provides for both injunctive relief and compensatory damages. A plaintiff can seek an injunction against continued use of his identity, and can recover monetary damages to compensate for the harm caused by past uses. The damage award primarily compensates for emotional distress. See Garis v. Uncut-RawTV, No. CV 06–5031, 2011 WL 4404035, at *3-4 (E.D.N.Y, July 5, 2011).

20.     Section 51 also provides for punitive or exemplary damages, if certain conditions are met. A plaintiff can recover exemplary damages if the defendant knew that the plaintiff had not consented to the use of her identity. Id. at 4-5. Courts may award exemplary damages if necessary to deter future violations of Section 51.

21.     The Defendants have violated RB's rights and knew he did not consent to the movie.  RB also has a contract with Black Entertainment Television ("BET") associated with a movie about his life and Defendants unauthorized use of any aspect of RB's life negatively impacts his rights to publicity.    See Affidavit of Brown at paragraph 21.

22.     The Defendants have violated RB's rights to publicity.   See Exhibit A&B to Amended Complaint.

 23.     All the Defendants, especially Simmons and Shelley, are keenly aware that intellectual property about RB, WH and BKB, are very valuable and of interest to the public. See Affidavit of Brown at paragraph 22.

24.     BKB died in 2015 in the state of Georgia. See Affidavit of Brown at paragraph 3.

25.     Georgia's courts have developed a common law right of publicity. Various Georgia court decisions refer to the "right of publicity," "misappropriation of likeness," and similar terms. The Supreme Court of Georgia's 1982 decision in Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.  established that Georgia's right to publicity survives death. 296 S.E.2d 697 (1982).

26.     Georgia's right of publicity protects against unauthorized uses of a person's identity "for financial gain." The <u>King</u> defendant's sale of plastic busts was considered commercial and in violation of King's right to publicity. In <u>Alonso v. Parfet</u>, the Georgia Supreme Court further ruled that use of a person's name on "various forms and documents" used in the course of business could establish a violation. 325 S.E. 2d 152 (Ga. 1985).

27.     The Estate of BKB does not consent to the release of the film and the Defendants have violated the right of BKB. See Brown Affidavit as paragraph 30.

28.     The Defendants are using the life, image, name and likeness of BKB for financial gain in violation of rights of the Estate of BKB. See Amended Complaint Exhibit A.

29.     In 2004, RB through his company Brownhouse Entertainment, Inc. ("Brownhouse") (dissolved), and Shelley/Simmons through their company B2 (dissolved), signed an agreement for the creation of the television series, "Being Bobby Brown". The show aired on Bravo for one season.

30.     Pursuant to the agreement between B2 and Brownhouse, Brown, Shelley and Simmons agreed not to use any materials associated with Brown's family friends or employers without his consent in tv or film projects.  Section 2(b) and section 6 on the Agreement reads as follows:

Section 2 (b) on the Contract

        b.     <u>By Brownhouse</u>:

        i.     Brownhouse shall lend the services of Artist, and Artist shall perform on-camera talent services on

an exclusive basis during all periods of production and Artist shall undertake no services that would materially interfere with Artist's services hereunder.  **Artist grants to Company the right to use, film, tape and otherwise record events relating to or occurring in Artist's life and portions of Artist's life story including without limitation any relationships with family, friends, employers and the like during and after all phases of production of the Project**, so that Company can produce episodes of the Project, and so that Company can distribute, exhibit and/or otherwise use the Project and/or other works, productions **and materials based** thereon.

6.    Confidentiality:  Except where required by law, **both parties shall keep confidential the Project and any ideas, concepts, stories plots, themes or other material related to the Project unless express written consent is provided by the parties.  Neither party shall: circumvent the other's role and anticipated financial compensation in connection with the Project or other unscripted television programs; negotiate a side deal with any third party in the which does not include the other party; or any way attempt to circumvent the spirit and intent of this Agreement.**

See Exhibit C To The Amended Complaint.

31.    The Defendants have taken information Simmons and Shelley obtained while working with RB on "Being Bobby Brown" and have utilized the material in the film. This includes information about WH, BKB, RB and others. See Affidavit of Brown at paragraph 25.

32.    The Defendants have not obtained the written consent of RB in the creation of the film. See Affidavit of Brown at paragraph 26.

33.    The Defendants have (1) circumvented RB's role (2) have negotiated a side deal with a third party to make the BKB project with includes information obtained and associated with the show "Being Bobby Brown" and  (3) circumvented the spirit and

intent  of the Agreement in violation of paragraph 6 of the Agreement by utilizing information, concepts, ideas and materials obtained during the production of "Being Bobby Brown" to create the BKB movie without the consent of the Plaintiff. See Affidavit of Brown at paragraph 27.

34.     Brown and his company performed their obligations under the Agreement. B2, Shelley and Simmons have partnered with Swirl, SSE and TV One in violation of the agreement reached in 2004. See Affidavit of Brown at paragraph 28.

## ARGUMENT

### 1. Plaintiffs Request For An Injunction Must Be Granted Because The Defendants' Are Violating Multiple Rights That Belong To The Plaintiffs

## APPLICABLE LAW AND DISCUSSION

### I. Preliminary Injunction

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Systems, Inc. v. C L Systems,Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006). The district court has broad discretion when making that determination; however, the burden is upon the movant to demonstrate the necessity of injunctive relief per the Dataphase factors. Id.

In determining whether a preliminary injunction should be issued, a district court must take into account the threat of irreparable harm to the movant, the balance between this harm and the harm to the other party if the injunction is granted, the probability of movant's success on the merits, and the public interest.   See Dataphase Systems, Inc., 640 F.2d at 113 (8th Cir.1981).   The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits.   See Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

## 1. Success On The Merits

The New York standard for granting a preliminary injunction is well established: a movant must show (1) the likelihood of success on the merits; (2) irreparable injury absent the granting of a preliminary injunction; and (3) a balancing of the equities that favors the movant's position. Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 (1990); W.T. Grant Co. v Srogi, 52 NY2d 496, 517 (1981). Plaintiffs' have absolute success of the merits in this action.  Plaintiff "need only show a *reasonable probability* of success, that is, a "fair chance of prevailing" on the merits. Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013). (emphasis added) (internal quotation marks omitted); See also Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc) ("[W]e emphasize that district courts should still apply the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes.").

A.      Defendants Have Violated Georgia's Common Law Right To Publicity In Regards To The Estate Of Bobbi Kristina Brown

Georgia recognizes a right of publicity to protect against "the appropriation of another's name and likeness ... without consent and for the financial gain of the appropriator ... whether the person whose name and likeness is used is a private citizen, entertainer, or ... a public figure who is not a public official." King, 296 S.E.2d at 703. "The right of publicity may be defined as [an individual's] right to the exclusive use of his or her name and likeness." Id. at 700 (citation omitted). Violation of the right of publicity is a state tort. Id. at 703. See also Alonso v. Parfet, 253 Ga. 749, 325 S.E.2d 152, 153 (1985) ("The courts in this state have long recognized that one who makes an unsanctioned appropriation of another's name or likeness for his own benefit may be liable to that person in tort.") (citation omitted). Georgia's right to publicity survives death. See King, 296 S.E.2d 697; Bell v. Foster, 2013 WL 6229174 (N.D. Ga. 2013) Toffoloni v. LFP Pub. Grp., LLC,572 F.3d 1201 (11th Cir. 2009).

In Alonso v. Parfet, the Georgia Supreme Court further ruled that use of a person's name on "various forms and documents" used in the course of business could establish a violation. 325 S.E. 2d 152 (Ga. 1985). In King, the manufacture and sale of Dr. King's bust, violated the right of publicity which had passed to his heirs upon Dr. King's death. King, 296 S.E.2d 697.

In this action, the Defendants are utilizing the name, likeness, life and persona of BKB for the marketing, production and distribution of the unauthorized BKB movie without the consent of the Estate of BKB. Such actions are a clear violation of Georgia law. For this reason, the Estate of BKB has a strong likelihood of success on the merits, warranting an injunction.

B.        Defendants Have Violated Brown's Right To Publicity In New York

§ 51 provides that a person whose image is used without consent may maintain an equitable action "to prevent and restrain the use" of the image. N.Y. Civ. Rights Law § 51. See ASA Music Prods. v. Thomsun Elecs., No. 96-cv-1872, 1999 U.S. Dist LEXIS 13221, at *5 (S.D.N.Y. Jan. 20, 1999) ("The default of the [defendants] and the well pleaded allegations of the complaint warrant the entry of an order permanently enjoining the [defendants] from selling any audio tape, CD, videotape or other phonorecord containing the name, voice, picture or portrait of [plaintiff] without his consent."), *adopted by* 1999 U.S. Dist. LEXIS 13157 (S.D.N.Y. March 31, 1999); Diller v. Steurken, 185 Misc. 2d 274, 277 (N.Y. Sup. Ct. 2000).

A defendant is liable under Section 51 of the New York Civil Rights Law when he or she uses a plaintiffs "name, portrait, picture or voice ... within this state for advertising purposes or for the purposes of trade without the written consent first obtained." N. Y. Civ. Rights Law § 51. The statute applies "to `cases where the plaintiff generally seeks publicity ... but has not given written consent for a particular use' or where `the defendant has otherwise exceeded the limitations of the consent.'" Myskina v. Conde Nast Publ'ns, Inc., 386 F.Supp.2d 409, 414 (S.D.N.Y. 2005) (quoting Stephano v. News Group Publ'ns, Inc., 64 N.Y.2d 174, 183 (1984)). "Although plaintiffs suing under Sections 50 and 51 often couch their claims in a right to privacy, `[t]he right which the statute permits the plaintiff to vindicate [in such circumstances] may, perhaps, more accurately be described as a right of publicity.'" Id. (quoting Stephano, 64 N.Y.2d at 183). New York does not recognize any right to publicity other than that created by Section 51. Pirone v. McMillian Inc., 894 F.2d 579, 585 (2d Cir 1990). To succeed on a claim under Section 51, "a plaintiff must prove (l) use of plaintiffs name, portrait, picture or voice, (2)

for advertising purposes or for the purposes of trade, (3) without consent, and (4) within the state of New York. Hoepker v. Kruger, 200 F.Supp.2d 340, 348 (S.D.N.Y. 2002) (quoting Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989)) (quotation marks omitted). Section 51 also includes several statutory exceptions.

It is settled that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture.'" Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 621-622 (S.D.N.Y. 1985) (citing Ali v. Playgirl, Inc., 447 F. Supp. 723, 726 (S.D.N.Y. 1978)). Similarly, in Young v. Greneker Studios, Inc., 175 Misc. 1027 (N.Y. Sup. Ct. 1941), the court held that a manikin that was modeled on the plaintiff was a portrait or picture of her. Id. at 1027-28. The court explained that "[t]he words 'picture' and 'portrait' are broad enough to include any representation [of a living person], whether by photograph, painting or sculpture." Id. at 1028.

The Supreme Court, New York County, held that the use in an advertisement of a model who looked like Jacqueline Kennedy Onassis violated sections 50 and 51. Onassis v. Christian Dior-New York, Inc., 122 Misc. 2d 603 (N.Y. Sup. Ct. 1984). The court held that "a representation which conveys the essence and likeness of an individual, which was intended to be, and did, in fact, convey the idea that it was the plaintiff" was a picture or portrait for purposes of the Civil Rights Law. Id. at 611. For this reason, Defendants' actions in Onassis were found to violate sections 50 and 51.

In this matter, the Defendants have violated section 50 and 51 as they use Brown's likeness, name and persona in the production, advertising and marketing of the unauthorized BKB movie. Such actions are a clear violation of Brown's rights warranting and injunction. Brown has a strong likely of success on the merits for this litigation due the unauthorized actions of the Defendants that violate Section 50 and 51 of the New York Civil Rights Law.

C.     Defendants Have Violated The Lanham Act

Section 43(a) of the Lanham Act creates liability for "[a]ny person who,

on or in connection with any goods or services, . . . uses in commerce . . . false or misleading

representation of fact, which is likely to cause confusion . . . as to the origin, sponsorship,

or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C.

§ 1125(a)(1). This provision of the Lanham Act "is an appropriate vehicle for the assertion of

claims of falsely implying the endorsement of a product or service by a real person." Albert v.

Apex Fitness, Inc., No. 97 Civ. 1151 (LAK), 1997 WL 323899, at *1 (S.D.N.Y. Jun. 13, 1997)

(quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:15 (4th

ed. 1996)). The elements of a false endorsement claim under the Lanham Act are that the

defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in

connection with goods or services (4) that is likely to cause consumer confusion as to the origin,

sponsorship, or approval of the goods or services. Warner Bros. Entm't Inc. v. Ideal World

Direct, 516 F. Supp. 2d 261, 268 (S.D.N.Y. 2007); Albert Furst von Thurn und Taxis v. Karl

Prince von Thurn und Taxis, No. 04 Civ. 6107 (DAB), 2006 WL 2289847, at *10-11 (S.D.N.Y.

Aug. 8, 2006).

The Defendants are utilizing the unregistered marks of Bobby Brown and the Estate of

BKB (in the name and likeness of Bobbi Kristina) in the marketing, distribution, advertising and

production of their BKB movie.  In addition, Defendants' movie is entitled "Bobbi Kristina".

See Exhibit A To The Amended Complaint.   Clearly no "last name" was needed as the

Defendants' know that the public would be aware as to whom the movie is about. These actions

violate the Lanham Act and constitute false origin and endorsement in addition to unfair

competition as the Defendants are utilizing the marks of the Plaintiffs without consent. The public has also been told that BKB's family is aware of the contents of the movie (See Affidavit of Alicia Brown at Exhibit A), however such statements are false. The Estate of BKB and Brown do not approve the film and have not seen the film or know it contents. For these reasons, the Plaintiffs' are entitled to an injunction as the Plaintiffs' have not endorsed the Defendants BKB film.

Moreover, Brown has a contract with BET for the production of his life story that will early in early 2018.  Brown's story was announced in April 2017 by BET.

http://thegrio.com/2017/04/27/bet-announces-new-biopic-the-bobby-brown-story/ . Due to the Defendants actions, Brown will be forced to compete with himself as the Defendants will be airing portions of Brown's life story without his consent in violation of the Lanham Act. For this reason, Brown is additionally entitled to an injunction.

D.    Defendants Have Defamed Robert Brown

The elements of defamation of character are as follows (1) a false statement (2) published to a third party without privilege or authorization (3) with fault amounting to at least negligence (4) that caused harm to the Plaintiff.  See Dillion of City of New York, 261 A.D.2d 34, 38 (N.Y.A.D. 1 Dept 1999).

In regards to Brown, as indicted in the character descriptions that appeared on www.breakdownexpress.com, the Defendants knew that the statement they published was false in regards to Brown and/or they acted in reckless disregard of the truth for their financial gain.

Upon information and belief, the Defendants' BKB movie contains defamatory and untrue depictions of RB being violent towards WH and the movie contains

defamatory untrue depictions of RB and BKB and scenes suggesting that RB does not

love his daughter or is committed to BKB. Such statements damaged and will continue

to damage Brown's reputation.   Due to the Defendants defamatory actions, Brown is

entitled to an injunction ceasing Defendant's activity and the airing of the BKB movie.

E.     <u>Defendant B2 Breached Its Contract With Brown</u>

Pursuant to the 2004 agreement between B2 and Brownhouse, Brown, Shelley and

Simmons agreed not to use any materials associated with Brown's family friends or employers

without his consent in tv or film projects.  The parties has an enforceable contract,

B2/Shelly/Simmons breached the contract, Brown performed the contract and due to the breach

of the contract, the Defendants have damaged Brown.  Defendant's BKB movie is partially the

product of the breach of the 2004 agreement.

The Defendants have (1) circumvented RB's role (2) have negotiated a side deal with a

third party to make the BKB project with includes information obtained and associated with the

show "Being Bobby Brown" and (3) circumvented the spirit and intent of the Agreement in

violation of paragraph 6 of the Agreement by utilizing information, concepts, ideas and materials

obtained during the production of "Being Bobby Brown" to create the BKB movie without the

consent of Brown. For these reasons, Brown can establish that the 2004 agreement has been

breached.

For the reasons presented in sections A-E above, the Plaintiffs have a strong likelihood of

success on the merits of this action, and an injunction is warranted.

**2. The Balance Of The Equites Tips Sharply In Favor Of Robert Brown
And The Estate of Bobbi Kristina Brown**

The equities of this case tip sharply in favor of Robert Brown and the Estate of BKB,
whose rights are being violated.  As between the "innocent infringer" who seeks to get off scot-
free, and the innocent infringed who has not engaged in any inequitable conduct, Courts have
noted that the public is entitled to protection from the illegal activity.  Estee Lauder, Inc. v.
Watsky, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970).  As the court in Estee Lauder stated, "It
would be irresponsible for a court to permit the defendants, whether in good faith or otherwise,
to palm off spurious products on the public. The community is entitled to receive for its money
the product which it believes it is buying." Id. The only effect of the injunction on the defendants
will be to prevent them from engaging in illegal conduct. Hard Rock Café v. Concessions
Services, Inc, 955 F.2d 1143 (7th Cir. 1992).   The public is not receiving in the Defendants'
BKB movie, a story that is endorsed or approved by the Plaintiffs, despite the Defendants use of
Plaintiffs' unregistered marks.

The Lanham Act was intended, in part, to protect persons engaged in commerce against
false advertising and unfair competition. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S.
763, 767–68, 120 L. Ed. 2d 615, 112 S. Ct. 2753 (1992) (quoting 15 U.S.C. §1127) the public
interest favors a grant of relief. Carillon Imps., Ltd. v. Frank Pesce Int'l Group Ltd., 112 F.3d
1125 (11th Cir. 1997). "There is a strong public interest in preventing false advertising of
products in the marketplace." Kennedy Industries, Inc. v. Aparo, 416 F. Supp. 2d 311, 317 (E.D.
Pa. 2005). In a case where a substantial likelihood of success on the merits and irreparable harm
have been established, the balance of the harms will flow naturally to the plaintiff's side. See
Osmose, Inc. v. Viance, LLC, 612 F. 3d 1298 (11th Cir. 2010). When all a district court has

prohibited is false advertising aimed at misleading the public that relief will "serve, rather than disserve, the public interest in truthful advertising, an interest that lies at the heart of the Lanham Act." Abbott Lab. V. Mead John-son & Co., 971 F. 2d 6, 19 (7th Cir. 1992). For these reasons, the balance of harm ways in favor of the Plaintiffs and there is a strong public policy in stopping the Defendants' actions.

### 3. First Amendment Concerns Do Not Exist In This Matter

The First Amendment right to free speech may provide a defense in false advertising cases, given the fact that advertising is a form of commercial speech. The United States Supreme Court has made it clear that commercial speech is within the ambit of the First Amendment. Virginia State Bd. of Pharmacy v Virginia Citizens Consumer Council, 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976). However, the Supreme Court has frequently held that false or misleading commercial speech is not protected. See Central Hudson Gas & Electric Corp. v Public Service Com., 447 US 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980). Commercial speech is protected only insofar as it serves an informational function, and it loses its protection if it deceives, misleads or constitutes fraudulent activity. Id. The Lanham Act's content neutral prohibition of false advertising "does not arouse First Amendment concerns that justify alteration of the normal standard for preliminary injunctive relief." Vidal Sassoon, Inc. v. Bristol- Meyers Co., 661 F.2d 272, 276 n.8 (2d Cir. 1981). In fact, false commercial speech "is not protected by the First Amendment and may be banned entirely." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 949 (3d 1993).

Due to the fact that the Defendants' have violated the Lanham Act and the Plaintiffs' rights to publicity, none of the Defendants actions are protected by the First Amendment. Defendants'

unlawful use of the Plaintiffs' unregistered marks further indicates that the Defendants' actions are not protected.

## CONCLUSION

For the reasons, stated above, the Plaintiffs have supported each of the elements necessary for injunctive relief. Accordingly, Plaintiffs request that this Court enter an order restraining and enjoining the Defendants from engaging in or otherwise promoting, marketing, advertising distributing or airing the Bobbi Kristina movie on Tv One.

ROBERT BROWN and
THE ESTATE OF BOBBI KRISTINA BROWN

_____
Christopher L. Brown
NYS Bar No. 2953891
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
September 18, 2017        cbrown@brownrosen.com