**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

| | | |
|---|---|---|
| ROBERT BROWN and THE ESTATE OF BOBBI KRISTINA BROWN, | : | Civil Action No. 1:17-cv-06824-AT |
| | : | |
| Plaintiff, | : | ECF Case |
| | : | |
| v. | : | |
| | : | |
| TV ONE LLC, SWIRL RECORDING & FILM INC. D/B/A SWIRL FILMS, INC., TRACEY BAKER- SIMMONS, WANDA SHELLEY and B2 ENTERTAINMENT LLC and SIMMONS SHELLEY ENTERTAINMENT, LLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DEFENDANT TV ONE, LLC IN
## OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
James Rosenfeld
Rachel F. Strom
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:  (212) 603-6455
Fax:  (212) 489-8340
jamesrosenfeld@dwt.com
rachelstrom@dwt.com

*Attorneys for Defendant TV One LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

      A.     TV One and the Bobbi Kristina Biopic.................................................. 2

      B.     Plaintiffs Bobby Brown and Bobbi Kristina Brown ............................... 3

      C.     Plaintiffs' Lawsuit................................................................................ 5

ARGUMENT ................................................................................................................ 6

I.     THE PRELIMINARY INJUNCTION ORDER PLAINTIFFS' SEEKS IS
       A CLASSIC UNCONSTITUTIONAL PRIOR RESTRAINT ........................................ 7

II.    PLAINTIFFS DO NOT SATISFY THE FUNDAMENTAL
       REQUIREMENTS FOR A PRELIMINARY INJUNCTION ........................................ 9

      A.     Plaintiffs Cannot Establish A Likelihood Of Success On The
            Merits. ............................................................................................ 10

      B.     Plaintiffs Cannot Demonstrate Irreparable Injury................................. 24

      C.     The Balance of Hardships and the Public Interest Weigh In Favor
            Of TV One and Against Issuance of an Injunction.............................. 25

CONCLUSION ............................................................................................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M.P. v. Hubbard Broad., Inc.,*
216 F. Supp. 2d 933 (D. Minn. 2001) ......................................................................................9

*Alexander v. United States*,
509 U.S. 544 (1993) ...................................................................................................................1

*Alfano v. NGHT, Inc.*,
623 F. Supp. 2d 355 (E.D.N.Y. 2009) .................................................................................14

*Alonso v. Parfet*,
253 Ga. 749, 325 S.E.2d 152 (Ga. 1985) ...........................................................................11

*People ex rel. Arcara v. Cloud Books, Inc.*,
68 N.Y.2d 553, 510 N.Y.S.2d 844 (N.Y. 1986) ..................................................................8

*Arenas v. Shed Media U.S. Inc.*,
881 F. Supp. 2d 1181 (C.D. Cal. 2011) .............................................................................26

*Armstrong v. Eagle Rock Ent., Inc.*,
655 F. Supp.2d 779 (E.D. Mich. 2009) ..............................................................................11

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015) ..........................................................................................19, 20

*Blair v. Inside Ed. Prods.*,
7 F. Supp. 3d 348 (S.D.N.Y. 2014) .....................................................................................16

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ..............................................................19, 20

*CBS Inc. v. Davis*,
510 U.S. 1315 (1994) .................................................................................................................8

*Celle v. Filipino Reporter Enters. Inc.*,
209 F.3d 163 (2d Cir. 2000) ..................................................................................................19

*Chabra v. Southern Monterey County Memorial Hospital, Inc.*,
1994 WL 564566 (N.D. Cal. Oct. 3, 1994) .......................................................................15

4811-8127-3680v.4 0102555-000006

*In re Charlotte Observer*,
921 F.2d 47 (4th Cir. 1990) ...................................................................................8

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*,
886 F.2d 490 (2d Cir. 1989)................................................................................20

*Cochran v. NYP Holdings, Inc.*,
210 F.3d 1036 (9th Cir. 2000) (per curiam)........................................................18

*Columbia Broad. Sys., Inc. v. U.S. Dist. Court for Cent. Dist. of California*,
729 F.2d 1174 (9th Cir. 1984) .........................................................................8, 25

*Costanza v. Seinfeld*,
279 A.D.2d 255, 719 N.Y.S.2d 29 (1st Dep't 2001) ..........................................14

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014).................................................................12

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ............................................11, 12, 13, 14

*Diaz v. NBC Universal, Inc.*,
536 F. Supp. 2d 337 (S.D.N.Y. 2008) *aff'd*, 337 F. App'x 94 (2d Cir. 2009)..........................9

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ........................................................12

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) .......................................................................21, 22

*Elrod v. Burns*,
427 U.S. 347 (1976)......................................................................................2, 3, 25

*Esch v. Universal Pictures Co.*,
2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .....................................................11

*Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*,
947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................................23

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)............................................................................................19

*Gilbert v. Sykes*,
147 Cal. App. 4th 13 (Cal. Ct. App. 2007) ........................................................15

*Goldblum v. Nat'l Broad. Corp.*,
584 F.2d 904 (9th Cir. 1978) ...............................................................................9

iii

*Guglielmi v. Spelling-Goldberg Prods.*,
   25 Cal. 3d. 860, 603 P.2d 454 (Cal. 1979) ....................................................................13, 14

*Gutchess Lumber Co. v. Wieder*,
   2013 WL 5346857 (N.D.N.Y. Sept. 23, 2013) ........................................................................10

*Hampton v. Guare*,
   195 A.D.2d 366, 600 N.Y.S.2d 57 (1st Dep't), *leave to appeal denied*, 82
   N.Y.2d 659 (1993) .................................................................................................................14

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ..............................................................................................................26

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ..............................................................................................................19

*Heller v. NBCUniversal, Inc.*,
   2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) ........................................................................13

*Jacobson v. Schwarzenegger*,
   357 F. Supp. 2d 1198 (C.D. Cal. 2004) .................................................................................15

*Jennings v. Telegram-Trib. Co.*,
   164 Cal. App. 3d 119 (1985) ................................................................................................17

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
   323 F. Supp. 2d 525 (S.D.N.Y. 2004).....................................................................................24

*Jordan v. Metropo. Life Ins. Co.*,
   280 F. Supp. 2d 104 (S.D.N.Y. 2003).......................................................................................8

*Kechara House Buddhist Assoc. v. John Does*,
   2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) ......................................................................15

*Kelly v. Schmidberger*,
   806 F.2d 44 (2d Cir. 1986)....................................................................................................15

*In re King World Prods., Inc.*,
   898 F.2d 56 (6th Cir. 1990) ...............................................................................................8, 25

*Lee v. Bankers Tr. Co.*,
   166 F.3d 540 (2d Cir. 1999)..................................................................................................14

*Lemerond v. Twentieth Century Fox Film Corp.*,
   2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ........................................................................14

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012).........................................................................20, 21, 22

iv

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006).........................................................................25

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ....................................................................19

*Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc.*,
    250 Ga. 135, 296 S.E.2d 697 (Ga. 1982) .............................................11

*McColm v. Anber*,
    2006 WL 3645308 (N.D. Cal. Dec. 12, 2006) ......................................15

*Meador v. New Times, Inc.*,
    36 F.3d 1103 (9th Cir. 1994) ......................................................................8

*Medina v. Dash Films*,
    2016 WL 3906714 (S.D.N.Y. July 14, 2016) ......................................21

*Metro. Opera Ass'n v. Local 100*,
    239 F.3d 172 (2d Cir. 2001)......................................................................24

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1979) (White, J., concurring) ..........................................7

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
    74 F. Supp. 3d 1134 (N.D. Cal. 2014)..................................................23

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)..........................................................................................17

*Montana v. San Jose Mercury News*,
    34 Cal. App. 4th 790 (Cal. Ct. App. 1995) ..........................................14

*Moyer v. Amador Valley Joint Union High Sch. Dist.*,
    225 Cal. App. 3d 720 (1990) ....................................................................17

*Near v. State of Minn.*,
    83 U.S. 697 (1931)..........................................................................................7

*Neb. Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)..................................................................................1, 7

*New Era Publ'ns Int'l v. Henry Holt & Co.*,
    695 F. Supp. 1493 (S.D.N.Y. 1988), *aff'd*, 873 F.2d 576 (2d Cir. 1989) ................................8

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ....................................................................23

v

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ........................................................................................18

*New York Times Co. v. United States,*
    403 U.S. 713 (1971) ......................................................................................1, 7

*Onassis v. Christian Dior-New York, Inc.,*
    122 Misc. 2d 603, 472 N.Y.S.2d 254 (Sup. Ct. N.Y. Cty. 1984) ...........................14

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) .........................................................................................8

*Page v. Something Weird Video,*
    960 F. Supp. 1438 (C.D. Cal. 1996) ...................................................................14

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.,*
    475 U.S. 1 (1986) ...........................................................................................26

*Philadelphia Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) ........................................................................................18

*Porco v. Lifetime Entm't Servs., LLC,*
    116 A.D.3d 1264, 984 N.Y.S.2d 457 (3d Dep't 2014) ............................................9

*Protic v. Dengler,*
    46 F. Supp. 2d 277 (S.D.N.Y.), *aff'd,* 205 F.3d 1324 (2d Cir. 1999) ....................17

*In re Providence Journal Co.,*
    820 F.2d 1342 (1st Cir. 1986) ........................................................................7, 8

*Reuters Ltd. v. United Press Int'l, Inc.,*
    903 F.2d 904 (2d Cir. 1990) ............................................................................24

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989) .........................................................20, 21, 22, 23

*Sherwood 48 Assocs. v. Sony Corp. of Amer.,*
    213 F. Supp. 2d 376 (S.D.N.Y. 2002), *aff'd in relevant part, vacated in part*
    76 F. App'x 389 (2d. Cir. 2003) ......................................................................21

*T-Mobile Ne. LLC v. Riverhead Water Dist.,*
    2016 WL 373968 (E.D.N.Y. Jan. 29, 2016) ........................................................24

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
    864 F.3d 236 (2d Cir. 2017) ............................................................................15

*Thoroughbred Legends, LLC v. The Walt Disney Co.,*
    2008 WL 616253 (N.D. Ga. Feb. 12, 2008) ...................................................10, 11

*Tilton v. Capital Cities/ABC Inc.*,
   827 F. Supp. 674 (N.D. Okla. 1993) ........................................................................9

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
   161 F. Supp. 3d 902 (C.D. Cal. 2016) ..................................................................21

*Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)........................................................................20, 22

*University of Notre Dame Du Lac v. Twentieth Century–Fox Film Corp.*,
   22 A.D.2d 452, 256 N.Y.S.2d 301, *aff'd on opinion of App. Div.*, 15 N.Y.2d
   940, 259 N.Y.S.2d 832 (1965) ...........................................................................14

*Valencia v. Universal City Studios LLC*,
   2014 WL 7240526 (N.D. Ga. Dec. 18, 2014) .......................................................11

*Vijay v. Twentieth Century Fox Film Corp.*,
   2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) .......................................................12

*Vogel v. Felice*,
   127 Cal. App. 4th 1006 (Cal. Ct. App. 2005) ........................................15, 16, 20

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).........................................................................................10, 26

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) .................................................................20

## Statutes

N.Y. Civ. R. Law § 51 ....................................................................................................14

## Other Authorities

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157,
   173 (2007)................................................................................................................7

*Restatement (Third) of Unfair Competition* § 47 cmt c ...............................................11

4811-8127-3680v.4 0102555-000006

Defendant TV One, LLC ("TV One"), by and through its undersigned attorneys, submits this memorandum of law in opposition to the motion of plaintiffs Robert Brown and The Estate of Bobbi Kristina Brown (together, "Plaintiffs") seeking a preliminary injunction to enjoin TV One from "marketing, selling, promoting, [and] distributing" TV One's original movie about the life of Bobbi Kristina Brown.

### PRELIMINARY STATEMENT

Plaintiff Robert "Bobby" Brown, a self-declared public figure who has publicly acknowledged striking his ex-wife Whitney Houston and "failing" his now-deceased daughter Bobbi Kristina Brown, now joins with his daughter's estate to ask this Court to grant one of the rarest forms of judicial relief – an unconstitutional prior restraint preventing TV One from distributing and promoting a movie on a matter of public interest.  Brown does so although he has never seen the movie, or read the script for the movie, or alleged that there is anything whatsoever wrong with the actual content of the movie.  And he does so explicitly because he plans on working with a different media company on his own movie about his life – and does not want to be "forced to compete with himself."  Motives aside, Plaintiffs' request strikes at the very heart of the First Amendment and must be denied.

"[C]ourt orders . . . that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993).  They "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  The United States Supreme Court has _never_ upheld a prior restraint enjoining publication – not even with the publication of military secrets, *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (reversing injunction prohibiting publication of Pentagon Papers as prior restraint), or where countervailing constitutional rights were at stake, *Neb. Press Ass'n*, 427 U.S. at 559 (in case where a defendant's Sixth Amendment rights were at

1

issue, overturning preliminary injunction preventing publication of accounts of widely publicized murder).  Plaintiffs' claims here – based on Brown's expectation that he may not like the content of a movie that he has not seen and that has not yet aired – do not remotely present the kind of "exceptional case" that could overcome the First Amendment's protections for free speech.

Plaintiffs also have not met their burden of demonstrating each of the factors necessary to justify the harsh and drastic remedy of a preliminary injunction.  Plaintiffs cannot show that they are likely to succeed on the merits of their claims because all their claims are barred by well-settled principles of law.  They cannot show that any alleged injury is irreparable and Plaintiffs ignore established law that a prior restraint on speech both disserves the public interest and "unquestionably constitutes irreparable injury" to those enjoined.  *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).  The balance of hardships also favors TV One because money damages would be adequate to compensate Plaintiffs in the highly unlikely event they were ultimately successful in their claims.  This is not a close case:  applicable law demands denial of the motion.

## STATEMENT OF FACTS

### A.    TV One and the Bobbi Kristina Biopic

TV One is a small cable television network targeting African American adults, and is headquartered in Silver Spring, Maryland.  Declaration of Robyn Greene Arrington ("Arrington Decl.") ¶ 2.  In 2016, TV One began the production of its original movie "Bobbi Kristina," a biopic about the life of Bobbi Kristina Brown ("Biopic").  *Id.* ¶ 3.  The Biopic is about Bobbi Kristina's highly publicized and tumultuous relationship with Nick Gordon after the death of her famous mother, recording artist and actress Whitney Houston, "[e]ven as she endures the pain of a strained relationship with her father . . . and aunt Patricia Houston."  *Id.*, Ex. 1.

TV One's involvement began with the development of the script for the Biopic back in the Summer of 2016, and it has been involved with the production throughout the entire process.

2

*Id.* ¶4.  Approximately half of TV One's staff worked on the Biopic in some manner during its various stages of development, including, among other things, production, research, marketing, production management, content distribution, sales, and legal.  *Id.*  To date, TV One has spent over $1,000,000 to complete the Biopic.  *Id.*

The Biopic is scheduled to air nationally on October 8, 2017 and has been heavily advertised and promoted by TV One.  *Id.* ¶¶6-7.  The Biopic is being treated as strictly confidential until the October 8 release date, which allows TV One to control the publicity and ensures that TV One maintains creative control over the Biopic.  *Id.* ¶5.  TV One has planned and executed an extensive publicity and marketing campaign worth over $1,000,000, which includes television advertising and marketing activities that announce the October 8, 2017 premiere date.  This seven figure amount has already been committed and cannot be refunded at this point.  *Id.* ¶¶6-8.  TV One also has made contractual commitments with advertisers who specifically paid to advertise their commercials during the airing of the Biopic.  *Id.*  If TV One were enjoined from airing the Biopic, TV One would suffer the loss of hundreds of thousands of dollars of advertising revenue and be subject to potential breach of contract claims.  *Id.*

### B.    Plaintiffs Bobby Brown and Bobbi Kristina Brown

According to his affidavit in this case, Plaintiff Bobby Brown ("Brown") is an international recording star who has sold millions of albums, and author, and has appeared in several movies.  Brown Affidavit, Dkt. No. 11, ¶ 19.  He is a member of the group "New Edition" and earlier this year he received a star on the Hollywood Walk of Fame.  *Id.*  In addition to his life in the "spotlight", as he has called it, he was also well known for his marriage to Whitney Houston.  In Brown's own words "Whitney and I had been public figures for a long time and our marriage . . . had become a permanent fixture in pop culture."  Declaration of James

Rosenfeld ("Rosenfeld Decl."), Ex. 1 at 201.  Whitney and Brown had a daughter, Bobbi

Kristina Brown, who died tragically in 2015.  *Id.*, Ex.1 at 159; AC ¶ 13.

Brown also starred in his own reality show entitled "Being Bobby Brown," which lasted

one season and included appearances of both Whitney Houston and their daughter, Bobbi

Kristina.  Rosenfeld Decl., Ex. 1 at 200.  While not popular with the critics, Brown has said that

"the ratings were huge when it first aired in the summer of 2005."  *Id.* at 201.

According to Brown's autobiography *Every Little Step*, which was published in 2016,

Brown admits that on a "particular night in early December 2003," when both Whitney Houston

and he were intoxicated, he was "in an unstoppable rage," which resulted in him striking

Whitney Houston.  *Id.*, Ex. 1 at 194-95.  In his own words, "I turned around to her, drew back

my hand, and smacked her across the face."  *Id.* at 195.  He added, "[f]rom that moment on, I

would forever be a wife beater."  *Id.*  Indeed, as a result of that violent behavior, Brown was

charged with misdemeanor battery related to alleged domestic violence.  Rosenfeld Decl., Ex. 1

at 196.  In the incident report, Brown was reported to have threatened to "beat her [Houston's]

ass and then struck the left side of her face with his open right hand."  *Id.*, Ex. 3.  The police

reportedly found a bruise on Whitney Houston's left cheek and a cut upper lip.  *Id.*

Brown's book also describes his relationship with his daughter Kristina, who, he says,

"often saw her mother and father high, and was around the two of us when we were fucked up."

*Id.* at 178.  In the book, Brown asks himself rhetorically, "How much quality time can you spend

with your daughter when you're high all the time?" Adding, "We failed her."  *Id.*  According to

Brown, Kristina did not attend his second wedding, spent months without contacting Brown, and

"avoid[ed]" Brown.  *Id.* at 286.

Brown also recounts how, in 2015, Kristina fell into a coma for six months.  Rosenfeld Decl., Ex. 1 at 299.  He writes that he was at Kristina's side and remembers thinking, "How much did our behavior – the drugs, the time I spent locked away from her – contribute to what she had become?" And "[w]ere there things that she saw in the way I treated her mother that made her more likely to stay in what I knew had to be an abusive relationship?" *Id.* at 303. After Bobbi Kristina passed away, he wished he "had been there with her and for her in the last few years to help ease her transition to adulthood." *Id.* at 312.[1]

As part of the media blitz surrounding his autobiography, Brown was interviewed on ABC television network by Robin Roberts in a 20/20 special.  *Id.*, Ex. 2.  During the interview, Brown agreed with Ms. Roberts that he struck Whitney Houston at least once.  *Id.* at 21:20.  He also agreed that he had not seen his daughter Bobbi Kristina in a while after Whitney Houston's death because they were estranged.  *Id.* at 27:54.

### C.    Plaintiffs' Lawsuit

On September 7, 2017, Plaintiff Brown filed this lawsuit against TV One as well as co-defendants Swirl Recording & Film Inc. d/b/a Swirl Films, Inc., Tracey Baker- Simmons, Wanda Shelley, B2 Entertainment LLC, and Simmons Shelly Entertainment, LLC.  Brown amended his complaint on September 12, 2017, adding his daughter's estate as an additional plaintiff, alleging, that while he is not the executor of the estate, the claims have been assigned to him. Amended Complaint ("AC") ¶¶ 4-10.

Although Brown admits that he has not seen the Biopic, Plaintiffs have alleged defamation claims against all defendants, right-of-publicity claims against all defendants, Lanham Act claims against all defendants, and a breach of contract claim against the other

---

[1] The book is filled with instances where Brown acknowledges his violent behavior.  For example, when his sister ruined his drum set, he "of course [] had to beat *her* up." Rosenfeld Decl., Ex. 1 at 8.  Brown also "whup[ed]" his fellow New Edition band member Michael Bivins after he spit on Brown (*id.* at 60).

named defendants.  AC ¶¶ 18, 44-93.  Plaintiffs' defamation claims are based on a casting call for the Biopic that describes the characters but does not describe the plot of the Biopic in any detail.  Brown alleges only that the Biopic may "indicate" that Brown was violent towards Whitney Houston and may include "derogatory comments" about his relationship with Houston and Kristina.  AC ¶¶ 7, 13-14, 21-22, 45, 53.  Plaintiffs' right-of-publicity and Lanham Act claims are based on Defendants' marketing for the Biopic, although the only "advertising" Plaintiffs have cited are two pictures announcing the cast and premiere date for the Biopic. Memorandum of Law In Support of Motion for Preliminary Injunction and Restraining Order ("Pl. Mem.") at 19-20, exhibit A-B.

Exposing the true purpose of this action, Plaintiffs allege that Brown has his own contract with Black Entertainment Television ("BET") – a major TV One competitor (Arrington Decl. ¶ 2) – to produce a movie about his life, which he claims is in direct competition with Defendants' Biopic and harms Brown's ability to capitalize off of this story.  *Id.* ¶¶ 91-93.  *See also* Pl. Mem. at 20 ("Brown has a contract with BET for the production of his life story that will early [sic] in early 2018. . . . Due to the Defendants [sic] actions, Brown will be forced to compete with himself").  Accordingly, on September 18, 2017, Plaintiffs moved for a preliminary injunction seeking to enjoin defendants "from marketing, advertising, promoting, distributing and airing a film about Bobbi Kristina Brown."  Dkt. No. 8.

## ARGUMENT

Plaintiffs' motion for a preliminary injunction is nothing more than a transparent attempt to prevent speech that Plaintiffs may not like.  It is, therefore, an unconstitutional prior restraint barred by the First Amendment and the New York State Constitution.  Additionally because Plaintiffs have failed to meet the basic requirements of a preliminary injunction, the motion should be denied.

6

I.    **THE PRELIMINARY INJUNCTION ORDER PLAINTIFFS' SEEKS IS A CLASSIC UNCONSTITUTIONAL PRIOR RESTRAINT**

Brown is attempting to prevent TV One from airing its Biopic because he believes the characterization of him in it may be false and defamatory and the marketing for the Biopic may cause others to believe he is somehow associated with it.  But such an order would be a prior restraint of speech in violation of the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n,* 427 U.S. at, 559.  Indeed, "[i]n its nearly two centuries of existence, the Supreme Court has *never* upheld a prior restraint on pure speech."  *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986).  *See also* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 173 (2007) ("never in the [200-plus] year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case or any other.").  That has been true for attempts to prevent the publication of the Pentagon Papers, despite government assertions that publication of confidential military secrets could impair national security, *New York Times Co.,* 403 U.S. at 723-24, or attempts to prevent the publication of an anti-Semitic publication that was found to disturb "public peace" and provoke "assaults and the commission of crime."  *Near v. State of Minn.*, 83 U.S. 697, 709 (1931).  Indeed, the Supreme Court has declared that prior restraints may be justified, if at all, only in the most exceptional circumstances – such as to prevent the publication of the sailing dates of troop ships or the location of soldiers in wartime, *Near*, 283 U.S. at 716, or to "suppress[] information that would set in motion a nuclear holocaust."  *New York Times Co.*, 403 U.S. at 726 (Brennan, J., concurring).  *See also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1979) (White, J., concurring) ("the First Amendment erects a

7

virtually insurmountable barrier" against the issuance of a prior restraint on the media); *People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553, 558, 510 N.Y.S.2d 844, 847 (N.Y. 1986) (prior restraint unconstitutional under New York law "absent a showing on the record that such expression will immediately and irreparably create public injury").

In the instant case, Plaintiffs have not even attempted to meet this demanding burden to justify their truly extraordinary request.  They do not cite, because they cannot, a single case in which a media organization was enjoined from publishing or airing a work in a suit for defamation, violation of right of publicity, or any similar claim.  In fact, courts uniformly hold that such motions are unconstitutional, and this case is no different.  *See, e.g.*, *CBS Inc. v. Davis*, 510 U.S. 1315, 1317-18 (1994) (Blackmun, J., in chambers) (setting aside state court preliminary injunction against a television network); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418-19 (1971); *New Era Publ'ns Int'l v. Henry Holt & Co.*, 695 F. Supp. 1493, 1525 (S.D.N.Y. 1988) ("we accept as black letter that an injunction is not available to suppress defamatory speech"), *aff'd*, 873 F.2d 576 (2d Cir. 1989); *Jordan v. Metropo. Life Ins. Co.*, 280 F. Supp. 2d 104, 111-12 (S.D.N.Y. 2003) (injunction against alleged defamation "would be unconstitutional as a prior restraint on freedom of expression"); *Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) (in case for defamation and false light, denying injunction as unconstitutional prior restraint); *In re Charlotte Observer*, 921 F.2d 47, 49 (4th Cir. 1990) (vacating injunctions prohibiting news organizations from publishing name of attorney as unconstitutional prior restraints); *In re King World Prods., Inc.*, 898 F.2d 56, 59 (6th Cir. 1990) (vacating TRO against broadcast of news program as unconstitutional prior restraint, over claim of invasion of privacy); *Matter of Providence Journal Co.*, 820 F.2d 1342, 1350 (1st Cir. 1986) (vacating TRO against newspaper's publication of certain materials as unconstitutional prior restraint); *Columbia*

*Broad. Sys., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 729 F.2d 1174, 1184 (9th Cir. 1984) (vacating injunction enjoining television network broadcasting surveillance tapes as a prior restraint); *Goldblum v. Nat'l Broad. Corp.*, 584 F.2d 904, 907 (9th Cir. 1978) (vacating order to produce film for review as a prior restraint); *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 339 (S.D.N.Y. 2008) (denying injunctive relief to enjoin the distribution of the movie "American Gangster")  *aff'd*, 337 F. App'x 94 (2d Cir. 2009); *A.M.P. v. Hubbard Broad., Inc.*, 216 F. Supp. 2d 933, 933-4 (D. Minn. 2001) (holding that injunction against television network on the grounds of "libel, slander, intrusion upon seclusion, publication of private facts, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation *per se*" was a prior restraint); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 682 (N.D. Okla. 1993) (denying injunction against broadcast regarding TV evangelists as prior restraint); *Porco v. Lifetime Entm't Servs., LLC*, 116 A.D.3d 1264, 1266, 984 N.Y.S.2d 457, 459 (3d Dep't 2014) (vacating TRO enjoining distribution of television movie).

These cases make clear that the constitutional protection of free speech flatly prevents the issuance of an order enjoining the broadcast of the Biopic simply because Plaintiffs may not like its content or worry that others may believe they have endorsed it.  TV One is not going to broadcast troop movements.  This is not a case where national security concerns are in jeopardy. It is not even a case involving potential irreparable injury from the disclosure of trade secrets or other confidential information.  The injunctive relief Plaintiffs seek is plainly barred by the First Amendment, and the requested injunctive relief should be denied for that reason alone.

## II.   PLAINTIFFS DO NOT SATISFY THE FUNDAMENTAL REQUIREMENTS FOR A PRELIMINARY INJUNCTION

In addition to its constitutional defects, Plaintiffs' motion to prevent the distribution and promotion of the Biopic must be denied for the separate reason that it fails to satisfy the basic

requirements for a preliminary injunction.  "A preliminary injunction is an extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *id.* at 22.  A plaintiff seeking such relief must satisfy each and every one of the following elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 20.  For the reasons discussed below, Plaintiffs have not come close to making the required clear showing.

### A.  Plaintiffs Cannot Establish A Likelihood Of Success On The Merits.

Plaintiffs' claims against TV One are all barred by well-settled law. [2]

#### 1.  The Estate's Right-of-Publicity Claim under Georgia Law is Barred by the First Amendment

The Estate's right-of-publicity claim under Georgia law fails because "[t]he First Amendment protection of freedom of expression restricts such a claim."  *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *11 (N.D. Ga. Feb. 12, 2008) (citations omitted).

*Thoroughbred Legends* is instructive.  There, the court, applying Georgia law, held that the First Amendment protected defendants from plaintiffs' claim that they unlawfully appropriated plaintiffs' name and likeness in defendants' movie entitled "Ruffian," which was based on historical events concerning a famous horse.  According to the court, "the right of publicity is not infringed by the dissemination of an unauthorized print or broadcast biography. *Use of another's identity in a novel, play, or motion picture is also not ordinarily an*

---

[2] Although Plaintiffs have also brought a separate cause of action for a permanent injunction (AC ¶¶ 94-98), permanent injunctions are a remedy, not an independent cause of action.  *See Gutchess Lumber Co. v. Wieder*, No. 5:13-CV-1013 FJS/DEP, 2013 WL 5346857, at *3, n.1 (N.D.N.Y. Sept. 23, 2013).

*infringement.*"  *Id.* at *12 (quoting *Restatement (Third) of Unfair Competition* § 47 cmt c; emphasis added by court).

Here, there is no question that the Biopic is a work of artistic expression.  *See id.*; *see also Valencia v. Universal City Studios LLC*, No. 1:14-CV-00528-RWS, 2014 WL 7240526, at *8 (N.D. Ga. Dec. 18, 2014) ("the *Honey* films are works protected by the First Amendment"); *Esch v. Universal Pictures Co.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010) (dismissing right-of-publicity claim because the "movie [*Despicable Me*] is clearly an expressive work protected under the First Amendment"); *Armstrong v. Eagle Rock Ent., Inc.*, 655 F. Supp.2d 779, 786-87 (E.D. Mich. 2009) (use of a picture of plaintiff in video performance could not support a misappropriation claim because it was "part of this 'work of artistic expression'"); *Daly v. Viacom, Inc.,* 238 F. Supp. 2d 1118, 1122-23 (N.D. Cal. 2002) (film "Bands on the Run is an expressive work subject to the protections of the First Amendment"). As such, the Biopic cannot give rise to a right-of-publicity claim.

In contrast, the cases cited by Plaintiffs relate to *commercial* products and uses as opposed to works of artistic expression, such as the Biopic at issue here.  *See* Pl. Mem. at 12 (citing *Alonso v. Parfet*, 253 Ga. 749, 325 S.E.2d 152, 153 (Ga. 1985) (right-of-publicity claim based on the use of his name in a grant application, not an expressive work); *Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc.*, 250 Ga. 135, 135, 296 S.E.2d 697, 698 (Ga. 1982) (selling Dr. Martin Luther King Jr. merchandise)).

Moreover, to the extent Plaintiffs' base their claim on the marketing for the Biopic, this First Amendment protection extends to "the use of plaintiffs' likeness in advertising the film is protected because the film itself is protected."  *Thoroughbred Legends*, 2008 WL 616253, at *12 (citation omitted).  The law is clear that "advertisements of expressive works are not actionable

where the advertisements are 'merely an adjunct of the protected [work] and promote only the protected [work].'" *Daly*, 238 F. Supp. 2d at 1123.  Here, because the Biopic is unquestionably an expressive work about the life of Bobbi Kristina Brown, Plaintiffs cannot maintain a right-of-publicity claim under Georgia law arising from the Biopic or the promotion of the Biopic.

### 2.     Brown's Right of Publicity Claim is Barred By the First Amendment

As a threshold matter, Plaintiff Brown incorrectly assumes that New York law would apply to his right-of-publicity claim.  However, under New York choice of law, the court "must apply the law of the Plaintiff's domicile to right of publicity claims." *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602 (S.D.N.Y. 2014).  Here, according to the Amended Complaint, Brown is a California resident with no alleged connection to New York whatsoever.  For this reason alone, Brown's claim under New York State law fails.  *See Id.* (because Illinois law applied, the court dismissed the plaintiff's New York state law right-of-publicity claim).

Even if Brown had asserted a right-of-publicity claim under California law, he is similarly barred by the First Amendment.  California courts are clear that, under the First Amendment, the "public interest in the subject matter of [a] program gives rise to a constitutional protection against liability." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542-43 (Cal. Ct. App. 1993).  That is true even where the program is allegedly false.  *Id.* (documentary film chronicling events and public personalities in the early days of surfing not subject to claim for appropriation of likeness, even though plaintiff alleged the documentary "erroneously characterizes me and contains prevarications about me"); *Daly*, 238 F. Supp. 2d at 1122 (dismissing misappropriation of likeness claims based on television film, because "a defense under the First Amendment is provided where the publication or dissemination of matters is in the public interest"); *Vijay v. Twentieth Century Fox Film Corp.,* NO. CV 14542014 WL 5460585, at *4 (C.D. Cal. Oct. 27, 2014) ("Under the First Amendment, a cause of action for

12

appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional,'" quoting *Daly*, 238 F. Supp. 2d at 1123).  For example, in *Heller v. NBCUniversal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6573985, at \*6 (C.D. Cal. Mar. 30, 2016), despite claims that the film "Straight Outta Compton" was false and defamatory, the court dismissed a right-of-publicity claim because the film involved matters of public interest.  As the court explained, "The Film concerns a public controversy over Plaintiff's tumultuous relationship with the 'hugely successful' N.W.A. . . . Because there is little doubt that N.W.A. has had an immense influence on popular culture both domestically and internationally, the role Plaintiff played in N.W.A.'s rise to stardom is certainly a matter of public interest."  *Id.*

Similarly, Brown himself admits that his tumultuous public relationship with Whitney Houston is a matter of public interest and a "permanent fixture" of pop culture.  Rosenfeld Decl., Ex. 1 at 201; Exs. 4-15.  Brown himself also acknowledged the public interest in his relationship with Bobbi Kristina, addressing it at length in his autobiography and discussing it on national television.  *Id.*, Ex. 1 at 175-285, 299-311; Ex. 2 at 27:54.  Accordingly, just as in *Heller,* the First Amendment bars Brown's right-of-publicity claim based on the Biopic.

Further, under California law, just like Georgia, courts consistently hold that promotional materials for an expressive work enjoy the same constitutional protection as the work itself.  For example, in *Guglielmi*, the California Supreme Court explained that the use of the name and likeness of the actor Rudolph Valentino to promote a film "was merely an adjunct to the exhibition of the film. … It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise. Since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's right of publicity, the use of his identity in advertisements for the film is similarly

not actionable." *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d. 860, 872-73, 603 P.2d 454, 462 (Cal. 1979).  *See also Daly*, 238 F. Supp. 2d at 1122-23 (no claim based on advertisements depicting plaintiff); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996) (film catalog and video covers protected speech); *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790, 797 (Cal. Ct. App. 1995) (no liability for use of plaintiff's likeness in posters sold by publisher "to advertise the quality and content of its newspaper").  Thus, the marketing of the Biopic is similarly protected under California law, and Brown cannot succeed on this claim. [3]

### 3.   Brown Cannot Demonstrate A Probability of Success On His Defamation Claim

Brown also mistakenly asserts a defamation claim under New York law.  However, "[u]nder New York choice-of-law rules in defamation cases 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  Because Brown is a California resident, there is a presumption that California law applies, and under California law, Brown's defamation claim fails.  Nevertheless, under either California or New York law, Brown's defamation claims fail as a matter of law for three independent reasons.

---

[3] Even under New York law, Brown would have no viable right-of-publicity claim because the Biopic, and the promotion for it, do not constitute "advertising" or "trade" for the purposes of Section 51 of the New York Civil Rights Law.  *See Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635(LAP), 2008 WL 918579, at 3, n.1 (S.D.N.Y. Mar. 31, 2008) (fictional movie *Borat*, and the promotional materials for the movie, immune from liability); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 358-60 (E.D.N.Y. 2009) (docudrama about trial of mob boss and marketing material for the docudrama not subject to liability); *University of Notre Dame Du Lac v. Twentieth Century–Fox Film Corp.*, 22 A.D.2d 452, 454-58, 256 N.Y.S.2d 301, 304-07 (1st Dep't), *aff'd on opinion of App. Div.*, 15 N.Y.2d 940, 259 N.Y.S.2d 832 (1965) (use of an individual's and a university's names in the novel and fictional movie, "John Goldfarb, Please Come Home," was protected by the First Amendment); *Hampton v. Guare*, 195 A.D.2d 366, 366, 600 N.Y.S.2d 57, 58 (1st Dep't), *leave to appeal denied*, 82 N.Y.2d 659 (1993) (affirming dismissal of a Section 51 claim over the alleged use of the plaintiff's life story in the play "Six Degrees of Separation."); *Costanza v. Seinfeld*, 279 A.D.2d 255, 255, 719 N.Y.S.2d 29, 30 (1st Dep't 2001) (affirming dismissal of a Section 51 claim over the alleged use of plaintiff's persona to create the character George Costanza on "Seinfeld").  In contrast, *Onassis v. Christian Dior-New York, Inc.*, 122 Misc. 2d 603, 604, 472 N.Y.S.2d 254, 256 (Sup. Ct. N.Y. Cty. 1984), on which Plaintiffs rely, involved an advertising campaign of commercial products by Christian Dior, not advertising of an expressive work.

>           **i.        Brown Has Not Identified Allegedly Defamatory Statements**

First, defamation claims must be pled with "specificity," *Gilbert v. Sykes*, 147 Cal. App.

4th 13, 32 (Cal. Ct. App. 2007), and plaintiff must "clearly and comprehensively specify the

statements by which they claim to have been injured," *Vogel v. Felice*, 127 Cal. App. 4th 1006,

1017 n.3 (Cal. Ct. App. 2005); *see also McColm v. Anber*, NO. C06-7369 PJH, 2006 WL

3645308, at *11 (N.D. Cal. Dec. 12, 2006) ("the defamatory statement must be specifically

identified, and the plaintiff must plead the substance of the statement."); *Jacobson v.*

*Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (same); *Chabra v. Southern*

*Monterey County Memorial Hospital, Inc.*, NO. CIV. C 94 20335 FAI, 1994 WL 564566, at *7

(N.D. Cal. Oct. 3, 1994) ("[t]he words constituting libel or slander must be specifically

identified, if not pled verbatim"); *Kechara House Buddhist Assoc. v. John Does*, No. 15-cv-

00332-DMR, 2015 WL 5538999, at *5 (N.D. Cal. Sept. 18, 2015) ("complaint sets forth the

statements made on the blogs in unspecific, general terms. This is inadequate … since … the

court can only speculate about the actual words that constitute the alleged defamatory

statements."). Likewise, New York law requires a libel complaint to "afford defendant sufficient

notice of the communications complained of to enable him to defend himself.'" *Tannerite*

*Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (quoting *Kelly v.*

*Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)). "As a practical matter, this rule requires the

plaintiff to identify not only the publication, but also the respect in which it was allegedly false. .

. .Some specificity is necessary so defendants and courts may address themselves to the parts of a

communication alleged to be false and defamatory instead of those not objected to." *Id.*

Brown does not remotely approach satisfying this critical pleading requirement – and it is

hard to see how he can do so when he has not even seen the Biopic. Brown alleges only that

Defendants published "comments/words/scripts/movie indicating" that he "engaged in multiple

acts of violence and abuse and [Bobbi Krisina] was a witness to such action" and Defendants published derogatory comments "in regards to his relationship with [Whitney Houston] and [Bobbi Kristina]."  AC ¶¶ 46, 53.  This pleading leaves TV One in the untenable position of having to guess just what parts of the Biopic Brown finds objectionable.  Indeed, Brown himself has conceded that he violently hit his ex-wife, used drugs around his daughter and questioned if allowing his daughter to see "the way I treated her mother . . . made her more likely to stay in what I know to be an abusive relationship?"  In the face of these concessions, it is impossible to fathom precisely what portions of the Biopic Brown can allege are false and defamatory.  For this reason alone, Brown's purely speculative defamation claims are unlikely to succeed.

### ii.     Brown's Complained-Of Statements Are Not Provably False

In the Amended Complaint, Brown takes issue with statements made in casting calls posted on www.breakdownexpress.com – not in the Biopic – which purportedly described him as "a hard drug user and soon devolves into violence and abuse towards his wife. After Whitney's death, Bobby moves on to another wife and children, and only briefly appears to have dinner with the devastated and needy Krissi, towards whom he is affectionate but non-committal."  AC ¶ 15.  He further complains that "upon information and belief" the Biopic contains untrue depictions of him "being violate [sic] towards [Whitney Houston]" and scenes of him with Bobbi Kristina "suggesting that [Brown] does not love his daughter or is committed to BKB."  AC ¶¶ 21-22.  Even if these "statements" were included in the Biopic, they do not give rise to a claim.

As an initial matter, Brown cannot show that the complained-of statements included any false facts.  A defamation "plaintiff cannot be said to have carried this burden so long as the statement appears substantially true…. Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Vogel*, 127 Cal. App. 4th at 1021 (citation omitted). *See also Blair v. Inside Ed. Prods*., 7 F. Supp. 3d 348, 357 (S.D.N.Y.

2014) ("Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced"); *Jennings v. Telegram-Trib. Co.*, 164 Cal. App. 3d 119, 125 (1985) ("tax fraud" and "tax evasion" were "harsh terms" but captured gist of plaintiff's no contest plea to failure to file tax returns).

Here, the complained-of statements capture the "gist and sting" of Brown's relationship with Whitney Houston. As Brown admits in his book, he "smacked [Whitney Houston] across the face." Rosenfeld Decl., Ex. 1 at 194-95. And he confirmed during his 20/20 interview that he hit her at least once. *Id.*, Ex. 2. Further, there is a domestic violence incident report in which the police noted that Whitney Houston claimed Brown threatened to "beat" her and she had a bruise on her face and a cut upper lip. *Id.*, Ex. 3. Brown even understood that after that incident everyone would see him as a "wife beater." *Id.*, Ex. 1 at 195-96. Thus, if the Biopic contains statements that Brown was violent towards Whitney Houston, Brown has conceded that is true.

Next, any claims that may appear in the Biopic that Brown had an "affectionate but non-committal" relationship with Bobbi Kristina are similarly non-actionable. Initially, any scenes showing Brown's love but "non-committal" to his daughter are constitutionally protected opinion. Under the First Amendment, a "statement of opinion relating to matters of public concern which does not contain a *provably false* factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (emphasis added). "[E]xaggerated expression[s] conveying the [] speaker's disapproval" or "expression[s] of subjective judgment" are not actionable as defamation. *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal. App. 3d 720, 725-26 (1990). A classic subjective expression of disapproval that cannot be proven true or false – such as any suggestion that Brown was not "committed" to his daughter – are not actionable. *See Protic v. Dengler*, 46 F. Supp. 2d 277, 280

17

(S.D.N.Y.), *aff'd*, 205 F.3d 1324 (2d Cir. 1999) (statements that plaintiff "was not competent to perform" his job are protected opinion); *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000) (per curiam) (attorney Johnnie Cochran would "say or do just about anything to win, typically at the expense of the truth" is protected opinion).

But, to the extent the statements in the Biopic about Brown's relationship with Bobbi Kristina could be understood as statements of fact, Brown has admitted that his relationship with his daughter was strained – that he often did drugs around her, "failed" her (Rosenfeld Decl, Ex. 1 at 178), they went "many months without any contact," (*id.* at 285), and "she was avoiding" him. *Id.* He also admits that he allowed Bobbi Kristina to see the way he treated her mother, which may have caused Bobbi Kristina to enter into an abusive relationship, that he wasn't there after the death of her mother, wishing he "had been there with her and for her in the last few years to help ease her transition to adulthood." *Id.* at 312. *See also id.* Ex. 2 at 27:54; 30:52. Any statement that he could be "non-committal" are more than backed up by Brown's own public statements about his relationship with Bobbi Kristina.

### iii.     Plaintiff Brown Has Not Plausibly Pled Actual Malice

Finally, Brown's defamation claims fail for the third and independent reason that Brown, a self-declared "public figure" has not adequately alleged actual malice.  The United States Supreme Court has made clear that, as a matter of First Amendment law, where the plaintiff is a public figure, he must show not only that the challenged statement was false, *see Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986), but that the defendant acted with "actual malice"—that is, with "knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  The actual malice standard is "a subjective one," requiring proof by clear and convincing evidence that "the

defendant actually had a high degree of awareness of probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (ellipsis omitted).

There can be no doubt that Brown is a public figure.  Indeed, he describes himself as one in his Book (Rosenfeld Decl., Ex. 1 at 201).  *See also* Brown Aff. ¶ 19 ("I am an international recording star, author and I have appeared in several movies. I am a member of the group 'New Edition' and earlier this year, we received a star on the Hollywood Walk of Fame.").  This Court can find plaintiff to be a public figure based on these concessions alone.  *See, e.g., Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("Given plaintiff Celle's own characterization of himself as a 'well known radio commentator' within the Metropolitan Filipino–American community, the district court correctly held that he is a public figure").  Because Brown is a public figure, he must allege actual malice.

To "adequately plead actual malice, a public figure must plead 'plausible grounds' to infer that a 'publisher had a subjective awareness of either falsity or probable falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity.' A public figure pleads such plausible grounds 'by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence' of actual malice." *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *5 (S.D.N.Y. Aug. 16, 2017) (citing *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015)); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (9th Cir. 2013) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)).

"To demonstrate reckless disregard of the truth" a plaintiff must allege and then prove by clear and convincing evidence that each defendant "entertained serious doubts as to the truth" of the challenged statements.  *Makaeff*, 715 F.3d at 270 (quoting *Gertz*, 418 U.S. at 331-32, 334, n.6).  Conclusory claims that the defendant "acted with actual malice" or published the

19

statements with reckless disregard for the truth" are insufficient to meet this exacting standard. *See, e.g. Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014); *Vogel*, 127 Cal. App. 4th at 1018 ("conclusory boilerplate allegation" "is insufficient to state a cause of action in a case where 'actual malice' of the *Sullivan* type is required"); *Biro*, 807 F.3d at 544; *Cabello-Rondon v.* 2017 WL 3531551, at *9.

That is precisely what Brown has done here – he alleges only that "[t]he actions of the Defendants were done with malice and disregard for the truth."  AC ¶ 49; *see also id.* ¶ 56 ("The actions of the Defendants were done with malice and disregard for the truth.")  Brown has not pled one single fact to support this general and conclusory allegation – let alone an allegation that is particular to TV One, as opposed to the other defendants.  Accordingly, Brown has not met his burden of pleading actual malice, and his defamation claim will fail as a matter of law.

### 4.     Plaintiffs Cannot Succeed On Their Lanham Act Claim

Plaintiffs' claim that Defendants are utilizing the unregistered marks of Bobby Brown and the Estate of Bobbi Kristina in violation of the Lanham Act is similarly barred by the First Amendment.  The Second Circuit has recognized that "[b]ecause overextension of Lanham Act restrictions . . . might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).  Since *Rogers*, a case addressing the use of Ginger Roger's name in a film title, courts within the Second Circuit have recognized that the "Lanham Act is inapplicable to 'artistic works' as long as the defendant's use of the mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source of the work."  *See Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (citing *Rogers*, 875 F.2d at 999, and *Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)); *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 495 (2d Cir. 1989) ("the

*Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression").

As a threshold matter, it is clear that the Biopic qualifies as an "artistic work" to which the *Rogers* framework applies. *Rogers* itself was about a film, and courts have regularly applied the test to films, television programs, and other audiovisual works, including those made for profit. *See, e.g., Medina v. Dash Films,* 15-cv-2551, 2016 WL 3906714, at *4-*5 (S.D.N.Y. July 14, 2016) (short film series); *Louis Vuitton,* 868 F. Supp. 2d at 177 (film *The Hangover: Part II*); *Sherwood 48 Assocs. v. Sony Corp. of Amer.*, 213 F. Supp. 2d 376, 377 (S.D.N.Y. 2002)*, aff'd in relevant part, vacated in part* 76 F. App'x 389 (2d. Cir. 2003) (film *Spider-Man*); *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016) (television series *Empire*).

Next, the use of Bobbi Kristina's and Bobbi Brown's names is artistically relevant to the Biopic because the Biopic tells the story of Bobbi Kristina Brown and those around her, including her father. "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'" *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in original); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero."). The purpose of the artistic relevance requirement is simply to ensure that the defendant did not include the mark "just to exploit [its] publicity value." *Rogers*, 875 F.2d at 1001; *see also Louis Vuitton*, 868 F. Supp. 2d at 178.

Additionally, TV One did not "explicitly mislead" viewers as to the source or content of the Biopic. The relevant question here is "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise

authorized by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179; *see also Twin Peaks*, 996 F.2d at 1379; *E.S.S.*, 547 F.3d at 1100.  Although this determination is based on the same considerations as the ordinary likelihood-of-confusion analysis, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in Rogers." *Twin Peaks*, 996 F.2d at 1379; *see also Louis Vuitton*, 868 F. Supp.2d at 181, 184 n. 19 ("Even if the court assumes, arguendo, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail anyway" under the First Amendment," because "Rogers teaches that mark owners must accept 'some' confusion when outweighed by free speech interests."). [4]

Here, Plaintiffs have not alleged or attempted to show that TV One "explicitly misled" viewer about the source or content of the Biopic.  At most, Plaintiffs claim that public has been told that Bobbi Kristina Brown's family "is aware of the contents of the movie."  Pl. Mem. at 20.  However, this statement was not from TV One – it was just allegedly said by an actor in the Biopic.  Alicia Brown Aff., Dkt. No. 9, ¶ 4.  It is not part of any advertising or marketing for the Biopic, and indeed, it is not even about the source of the Biopic itself.  Nor is it misleading; Plaintiffs cannot deny that they have been aware of the project for some time and generally know about its content – indeed they have brought this lawsuit over the Biopic.  *See* AC ¶¶ 15, 17-18.

Finally, to the extent Plaintiffs' complain about the fact that the Biopic has been marketed, *Rogers* applies the use of marks in the promotion of expressive works.  Indeed, *Rogers* itself protected the title of a movie – which the court recognized was, in part, promotional. *Rogers,* 875 F.2d at 998 ("Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an

---

[4] Indeed, Plaintiffs cannot plausibly show a likelihood of confusion, even absent the First Amendment issues here, which is a requirement for Plaintiffs' Lanham Act claims.  *Louis Vuitton,* 868 F. Supp. 2d at184 n. 19 (viewers "are sophisticated enough to know that the mere presence of a [trademark] in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie").

integral element of the film-maker's expression as well as a significant means of marketing the film to the public."); *see also Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1143 (N.D. Cal. 2014) (use of mark in promotional trailer for a game was protected under Rogers test and did not "diminish its artistic relevance within the game"); *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 933-934 (N.D. Ind. 2013) (websites promoting the movie Dark Knight protected under the Rogers test because " it is hard to see that they really propose any commercial transaction, other than obliquely convincing consumers to buy a ticket to the film.  Instead, they are creative, fictional extensions of the film . . . and are thus entitled to First Amendment protection").

In fact, in attempting to support their Lanham Act claims, Plaintiffs have tipped their hand at what this case is really about.  Plaintiffs claim that Brown has contracted with BET for the production of Brown's life story, and allowing TV One to produce their own movie about Bobbi Kristina's relationship with Brown will "force" him "to compete with himself."  Pl. Mem. at 20.  In other words, Brown, under the guise of a Lanham Act claim, is trying to prevent the creation of unauthorized biographies about him.  But that is precisely what the First Amendment protects.  Public figures may "not use the trademark laws to prevent the publication of an unauthorized . . . biography or to censor all parodies or satires which use their name."  *New Kids on the Block v. News Am. Pub., Inc*., 971 F.2d 302, 309 (9th Cir. 1992); *Rogers*, 875 F.2d at 1000 ("[T]he slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable.").  Plaintiffs may not use the Lanham Act claim to prevent the distribution of a movie about them – simply because Brown wants to be the only one to tell his or Bobbi Kristina's story.  For this reason, Plaintiffs' claims are barred by the First Amendment.

### B.     Plaintiffs Cannot Demonstrate Irreparable Injury

Plaintiffs also fail to make the required clear showing that they likely will suffer irreparable harm in the absence of an injunction.  A showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citations omitted).  The moving party "must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.*; *see also Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 531 (S.D.N.Y. 2004) (same).  Furthermore, the harm must be "imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters*, 903 F.2d at 907 (citations omitted).

Here, Plaintiffs only make bald assertions that they will be irreparably harmed because defendants are defaming Brown, violating Plaintiffs' right of publicity, and violating the Lanham Act.  *See* AC ¶ 96.  But this speculative claim is insufficient to meet their burden.  *T-Mobile Ne. LLC v. Riverhead Water Dist.*, No. 15CV6310SJFAYS, 2016 WL 373968, at *3 (E.D.N.Y. Jan. 29, 2016) (holding that "speculative allegations of harm fail to establish a likelihood of irreparable harm").  Further, despite Plaintiffs' contention otherwise, Plaintiffs have an adequate remedy in law.  If they are able to demonstrate that they will prevail on the merits of their claims, which is highly unlikely, they can obtain money damages.  *See Metro. Opera Ass'n v. Local 100*, 239 F.3d 172, 177 (2d Cir. 2001) ("[I]njunctions are limited to rights that are without an adequate remedy at law, and because ordinarily libels may be remedied by damages, equity will not enjoin a libel absent extraordinary circumstances.")

Thus, the Court should deny Plaintiffs' preliminary injunction request because they have failed to show any irreparable injury.

4811-8127-3680v.4 0102555-000006

### C.   The Balance of Hardships and the Public Interest Weigh In Favor Of TV One and Against Issuance of an Injunction.

Injunctive relief should be denied for the separate and additional reason that the magnitude of the harm to TV One that would result from the issuance of the requested injunction – restraining its right to produce and distribute First Amendment protected speech – far outweighs the harm to Plaintiffs if the Biopic is aired.

First, a preliminary injunction in this matter would deprive TV One of its First Amendment rights by enjoining the publication of constitutionally protected speech.  "The first amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave."  *Columbia Broad. Sys., Inc.*, 729 F.2d at 1177; *see also In re King World Prod'ns*, 898 F.2d 56, 60 (6th Cir. 1990) (a prior restraint "by … definition, has an immediate and irreversible sanction") (citations omitted).  Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod*, 427 U.S. at 373.  *See also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment ... [and] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (internal citations and quotations omitted).

*Second*, as detailed in the declaration of Robyn Greene Arrington, because TV One has been preparing for the airing of the Biopic for months, it would suffer severe economic and reputational hardship if it were enjoined from airing it as scheduled.  The Supreme Court has recognized that a publisher's:

> control of first public distribution implicates not only his personal interest in creative control but his property interest in exploitation of prepublication rights, which are valuable in themselves and serve as a valuable adjunct to publicity and marketing. See *Belushi v. Woodward,* 598 F.Supp. 36 (D.C. 1984) (successful

25

> marketing depends on coordination of serialization and release to public); Marks, Subsidiary Rights and Permissions, in What Happens in Book Publishing 230 (C. Grannis ed. 1967) (exploitation of subsidiary rights is necessary to financial success of new books).

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555 (1985).  For this reason, courts recognize that a media defendant "would face tremendous hardship if it were subjected to an injunction" stopping the distribution of a show because the production company would "lose payments, subject it to liability for lost advertising revenues, and injure its reputation in the industry.  *Arenas v. Shed Media U.S. Inc.,* 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011).

Here an injunction, even a temporary one, would require TV One to reschedule the Biopic to a later date, forcing TV One to expend additional costs and upending the careful publicity and marketing campaign it has executed.  Arrington Decl. ¶¶6-8.  TV One has spent over one million dollars producing the Biopic, and over one million more to advertise the Biopic and announce the October 8 premiere date.  *Id.*  TV One also has made hundreds of thousands of dollars in contractual commitments with advertisers who specifically paid to advertise their commercials during the airing of the Biopic.  That revenue would be lost if TV One were enjoined from airing the Biopic.  TV One also would suffer untold reputational injuries if it were not able to follow through on its commitments to air the Biopic as planned on October 8, 2017.  *Id.* ¶¶7-9.  As a result, the equities weigh strongly against issuance of a preliminary injunction.

The public interest also weighs heavily against an injunction in this case.  The Supreme Court has properly cautioned that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (internal quotation marks omitted).  Here, in addition to curtailing TV One's First Amendment rights, an injunction would limit the public's access to speech on a matter of great public interest.  *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986) ("By protecting

26

those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information.").

Plaintiffs try to ignore the fact that they are attempting to prevent the distribution of an expressive work – a movie – and instead focus on the fact that Defendants are also marketing the Biopic.  Pl. Mem. at 23.  But Plaintiffs cannot ignore the real consequences of the relief they are requesting – preventing the publication of an expressive work.  Indeed, if this Court were to issue an injunction in the instant case, it would set a dangerous precedent – anyone who *believes* they may not like a movie, book or article could get an injunction against it simply because the movie, book or article was marketed to the public.  Such a precedent would have a chilling effect on the media's ability to disseminate news and entertainment.  Plaintiffs' request must be rejected.

## CONCLUSION

For all of the reasons set forth above, TV One respectfully requests the Court to enter an order denying Plaintiffs any form of injunctive relief in this action.

Dated: September 27, 2017

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By:     /s/ James Rosenfeld
James Rosenfeld
Rachel F. Strom
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
jamesrosenfeld@dwt.com
rachelstrom@dwt.com
*Counsel for Defendant TV One*