AO 120 (Rev. 08/10)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ on the following

☐ Trademarks or     ☐ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| PLAINTIFF | | DEFENDANT |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY |
|---|---|
| | ☐ Amendment     ☐ Answer     ☐ Cross Bill     ☐ Other Pleading |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

# EXHIBIT A

https://blackamericaweb.com/2017/04/28/first-look-at-tv-ones-bobbi-kristina-biopic-photo/

TV One has a couple of things up their sleeve for Summer/Fall 2017 but the biggest thing we are looking forward to is their Bobbi Kristina biopic.

Below is a look at the core cast which puts Demetria McKinney as Whitney Houston and Hassan Jonson as Bobby Brown



# EXHIBIT B

**From:** Tracey Baker-Simmons <tbakersimmons@me.com>
**Subject: B2 Brownhouse Co-Production Agreement**
**Date:** April 27, 2015 at 8:47:28 AM EDT
**Cc:** Wanda Shelley <wanda@simmonsshelley.com>
**To:** cbrown@brownrosen.com

Chris:

Please find attached the co-production agreement which outlines the talent fee for Bobby for the Being Bobby Brown series.

Also, we can not provide you with the actual distribution agreement because we signed an agreement that prohibits us from sharing the document with a 3rd party. Bobby was not a party of that agreement.


Best regards,


Tracey Baker-Simmons
Executive Producer
Simmons Shelley Entertainment,LLC

14

AGREEMENT

This letter dated as of March 25, 2004 confirms the terms of the development and co-production agreement reached between B2 Entertainment, LLC ("B2") and Brown House Entertainment, Inc. ("Brownhouse") in connection with the development, distribution, disposition and exploitation of the proposed television reality project currently entitled "Untitled Bobby Brown Project" (the "Project").

WHEREAS, the parties have formed an entity, B2Brownhouse, LLC, which is owned and controlled equally by B2 and Brownhouse, for the purpose of developing, distributing and producing the Project (the "Company"); and

WHEREAS, B2 shall enter into a production services agreement and shall provide the initial funding for the Project; and

WHEREAS, Brownhouse has agreed to loan-out the services of Bobby Brown ("Bobby") and Tommy Brown ("Tommy") (Bobby and Tommy shall be collectively referred to as "Artist"), as well as obtain fully executed agreements with all of the principal on-camera participants in connection with the Project.

NOW THEREFORE, for good and valuable consideration, the parties have agreed as follows:

1. Development/Production: B2 and Brownhouse agree to develop the Project or cause the Project to be developed for exploitation and to procure third party commitments for the production and/or distribution of the Project for a period commencing from the date of this agreement through and until December 31, 2004 (the "Term"). All rights in and to the Project during the Term shall be held by Company.

2. Services:

a. By B2:

  i. B2 shall provide 100% of the initial funding for the Project (the amount of which shall be determined based on a budget to be provided by B2) (the "Initial Investment"); and

  ii. B2 agrees to provide the services of Tracey Y. Baker ("Tracey") and Wanda Shelley ("Wanda") to supervise all production services and technical assistance which Company may require in connection with the production of the Project. Without limiting the generality of the foregoing, the services shall include: the hiring and/or furnishing of all personnel (including, without limitation, extras, stunt persons and other above-the-line personnel and below-the-line personnel); services; unions; location permits; work permits; facilities; equipment and materials reasonably necessary for the production.

 b. <u>By Brownhouse</u>:

  i. Brownhouse shall lend the services of Artist, and Artist shall perform on-camera talent services on an exclusive basis during all periods of production and Artist shall undertake no services that would materially interfere with Artist's services hereunder. Artist grants to Company the right to use, film, tape and otherwise record events relating to or occurring in Artist's life and portions of Artist's life story including without limitation any relationships with family, friends, employers and the like during and after all phases of production of the Project, so that Company can produce episodes of the Project, and so that Company can distribute, exhibit and/or otherwise use the Project and/or other works, productions and materials based thereon. Brownhouse shall cause Artist to: meet with and be interviewed from time-to-time by Company and other Project personnel, both on-camera and off-camera in connection with the Project; appear at such locations as Company and Artist may designate; participate in connection with promotion, marketing, advertising, publicity, interviews and similar matters (e.g., appearing on news shows, morning shows, talk shows, specials, and other programs) in connection with the Project; and perform such other services and Company and Artist may determine; and

  ii. Brownhouse shall cause Artist to grant to Company a perpetual, royalty free license to include music performed, recorded and/or controlled by Artist in the Project, and Artist agrees to obtain, or cause the music publisher, record label or third party to obtain, any and all consents required for those musical compositions performed by the Artist in connection with the Project and/or in or in connection with the advertising and promotion thereof and the Project.

3. <u>Proceeds</u>: After B2 recoups the Initial Investment, plus ten percent (10%), all proceeds derived by Company from the distribution, disposition and exploitation of the Project shall be shared equally (50%/50%) by B2 and Brownhouse. Proceeds shall include development fees or producing and all other income from all sources; provided that any acting or executive producing fees paid to Tracey and/or Wanda, as well as any acting fees

16

paid to Bobby Brown and/or Tommy Brown, if any, in connection with the Project shall not be included in the Proceeds to be split by the parties.

4. <u>Management</u>: B2 and Brownhouse shall negotiate with a third party financier/distributor as a team and shall mutually agree on all material decisions in connection with the development, distribution, disposition and exploitation of the Project; provided that in the event of a disagreement between the parties, B2 shall have final decision-making authority.

5. <u>Credit</u>:

a. <u>Individual Credit</u>. The parties agree that, in connection with the Project and subject to network and/or distributor approval, Tracey and Wanda shall be accorded executive producer credit in the main titles, or if no main titles, in the end titles, and Bobby and Tommy shall each be accorded co-executive producer credit on-screen, on a shared card in the main titles, or if no main titles, in the end titles.

b. <u>Company Credit</u>. The parties agree that B2 and Brownhouse shall be entitled to a presentation and logo credit in connection with the Project in the main titles, or if no main titles, in the end titles.

6. <u>Confidentiality</u>: Except where required by law, both parties shall keep confidential the Project and any ideas, concepts, stories plots, themes or other material related to the Project unless express written consent is provided by the parties. Neither party shall: circumvent the other's role and anticipated financial compensation in connection with the Project or other unscripted television programs; negotiate a side deal with any third party in the which does not include the other party; or any way attempt to circumvent the spirit and intent of this Agreement.

7. <u>Miscellaneous</u>: This agreement sets forth the entire agreement of the parties and supersedes all prior discussions, agreements or understandings regarding its subject matter. This agreement may be amended only by a written instrument signed by each of the parties. This agreement will be governed by California law. This agreement will inure to the benefit of and bind the parties and their respective heirs, executors, administrators, successors and permitted assigns.

The parties agree to execute such other documents as may be necessary to secure the rights contemplated hereunder. The parties contemplate that they will enter into a more elaborate agreement containing the terms recited in this agreement and such other provisions as are customary and appropriate in agreements of this nature. Unless and until the parties actually negotiate and sign such an agreement, if at all, this agreement will be deemed binding.

Case 1:17-cv-06658-AT Document 35 Filed 09/07/17 Page 7 of 18

17